COOPER v. LAWSON.

1. LANDLORD AND TENANT — UNSAFE PREMISES — LIABILITY OF LANDLORD—ACTIONS—EVIDENCE.

In an action against a landlord for injuries to a tenant's property arising from an unswept chimney flue, evidence of a conversation between the landlord's agent and another tenant relative to sweeping the flue in another apartment was properly rejected.

2. SAME.

Evidence as to the control assumed by another tenant over the means of access to the roof of the building was also properly rejected.

3. SAME—LANDLORD'S DUTY TO REPAIR—SEVERAL LESSEES.

When a landlord leaves separate portions of the same building to different tenants, and reserves control of those parts of the building or premises used in common by all the tenants, he must use reasonable diligence to keep in a safe condition the parts over which he retains control.

4. SAME—DUTY TO SWEEP CHIMNEY.

Where the chimneys to the several apartments of a building are separate, and the tenant of a single apartment might sweep its chimney without trespassing or interfering with the others, there is no duty resting upon the landlord to sweep it.

5. SAME—CITY ORDINANCE.

A city ordinance making it the duty of the owner, agent, or occupant of any building to have the chimney thereof swept once in each year imposes no duty in that respect upon the landlord in favor of the tenant.

Error to Wayne; Rohnert, J. Submitted February 10, 1905. (Docket No. 120.) Decided April 21, 1905.

Case by George W. Cooper against George E. Lawson and Thomas J. Kennedy, administrators of the estate of Thomas Kennedy, deceased, for damages caused by fire in premises rented from defendants. There was judg-

ment for defendants on a verdict directed by the court, and plaintiff brings error.    Affirmed.

*Walter Barlow* (*Edward A. Stricker*, of counsel), for appellant.

*May & O'Brien* (*Clarence A. Lightner*, of counsel), for appellees.

MONTGOMERY, J.   The estate of Thomas Kennedy, deceased, owns the building known as Nos. 247, 249, and 251 Michigan avenue, in the city of Detroit.   It is a three-story brick building, with stores underneath, and flats above the stores.   It has stairways running up from Michigan avenue for entrances to the two upper stories of the building.   There are three stairways in this building from the ground floor—one at No. 247, one at No. 249, and one at No. 251 Michigan avenue.   The building thus contains three stores on the ground floor, and two flats above each store, or six flats in all, for dwelling purposes. The tenants dwelling in the several flats or apartments go up to their flats from the street by a hallway from Michigan avenue.   Those dwelling in the third-story flats use the same stairways and hallways as the tenants of the second-story flats.   All the stairways are in common hallways used by the tenants.   At the rear of the building there are stairways leading up from the yard to the back porches or landings to the several flats.   The rear stairways do not continue up to the roof of the building. There is a platform or small porch above the stairway in rear of the third floor.   The means of going from this platform to the roof is an iron fire-escape ladder.   The stairway ends at the third floor.   There are back kitchen doors at the stairway landings of each floor.   This iron fire-escape ladder is fastened to the roof on the inside of the back porch, with a trapdoor above it.   The trapdoor was kept down and closed, but unfastened.   The ladder works on hinges or joints, so as to fasten it up to the roof, and is kept up most of the time.   The ladder is lowered

by pulling it down with a rope.   By means of this ladder
is the only way to get on to the roof of the building.
There is a chimney built on the east side of the building,
in the east wall of the building.   This chimney and the
fireplace are on the east side of the front parlor, about
midway, four or five feet back from the front of the build-
ing.   The fire grate is an open grate—a grate for the pur-
pose of burning soft coal.   The fireplace is about the regu-
lation size.   The opening is about two feet wide and two
feet high.   This chimney is one chimney with three flues,
and built to accommodate several apartments.

The plaintiff, with his family, resided in the flat on the
second floor of this apartment building, over No. 247
Michigan avenue, from June, 1900, until December 26,
1902.   He moved into this apartment before the death of
Mr. Thomas Kennedy, as his tenant.   Mr. Kennedy died
September 13, 1900.   Defendants are administrators of
his estate, and, as such, in charge of the building.   On
December 26, 1902, fire occurred in the apartment or flat
occupied by the plaintiff and his family, and burned and
destroyed all of his household furniture, pictures, and
household goods in his two parlors, and two bedrooms
and dining room.   He had no insurance on his household
goods and effects at the time of the fire.   This fire re-
sulted from an explosion of coal gas generated from burn-
ing soft-coal soot in the inside of the chimney leading
from the fire grate in the front parlor of the apartment or
flat occupied by plaintiff.   This chimney had not been
cleaned during the plaintiff's occupancy of this apartment
or flat.

The plaintiff commenced suit in the court below to recov-
er his damages for the loss of his household furniture, etc.,
resulting from this explosion and fire incident thereto; and
the court, at the conclusion of all the testimony offered on
the trial of the case, on motion of counsel for defendants,
directed the jury to return a verdict in favor of the de-
fendants of no cause for action, and judgment was ac-

cordingly entered on such verdict. The case is brought to this court by the plaintiff on writ of error for review.

It does not appear that there was any covenant or agreement on the part of the landlord to keep the premises in repair. Mrs. Gay, who, with her husband, occupied the flat above that of plaintiff, was called as a witness, and was asked as to a conversation with a Mr. Sevald, who collected rents for Mr. Kennedy, relative to cleaning the chimney. The question was ruled out. No error was committed in this. A new duty to plaintiff could not have arisen out of any conversation with Mrs. Gay relative to the condition of the flue connecting with her apartments.

The Botsfords had at one time occupied the flat above plaintiff, and plaintiff was asked:

"Now, do you know what the Botsfords did as to this folding ladder that you speak of—whether or not they allowed anybody to use it?"

This was ruled out for the reason that the witness had testified that he never had any occasion to go up there. It is to be noted that Botsford was not a tenant of defendants at the time of the accident, and had not been later than the fall of 1900. And their assumption of authority over this ladder, which was the only means of access to the roof, would not have fixed their rights even while they were occupying the flat. Much less would it have fixed the rights of the Coopers, who succeeded in the occupancy of the tenement. Moreover, it is undoubted that other tenants would be excluded from the use of this upper platform except as they had occasion to go upon the roof for a proper purpose.

This leaves for consideration the question of whether the circuit judge was right in directing a verdict. No case is cited to us, nor have we in our research found a case, which rules this. Recourse must be had to general principles in determining whether, at the common law, and in the absence of any obligation imposed by ordinance (such as will

be referred to later), the landlord was, under the circumstances of this case, bound to keep the chimney clean. The general rule that; in the absence of any agreement between the parties, the landlord is under no obligations to his tenant to keep the premises in repair, is well settled, and is not questioned in this case. See 18 Am. & Eng. Enc. Law (2d Ed.), p. 215. It is also generally held that, where only a part of the buiding is demised to a particular tenant, the landlord is not responsible to such tenant for conditions created by an occupant of another portion of the building which prove detrimental to the first-named tenant. Id. 218.

The plaintiff, while recognizing these settled rules, rests his case upon the rule which appears to have received the sanction of most courts which have dealt with the question, and which appears to us sound in principle: That when the landlord leases separate portions of the same building to different tenants, and reserves control of those parts of the building or premises used in common by all the tenants, he is under an implied obligation to use reasonable diligence to keep in a safe condition the parts over which he reserves control. The cases in which this rule has been laid down and applied are numerous: *Dollard* v. *Roberts*, 130 N. Y. 269 (14 L. R. A. 238); *McGinley* v. *Trust Co.*, 168 Mo. 257 (56 L. R. A. 334); *Lindsey* v. *Leighton*, 150 Mass. 285—being illustrative cases. In these cases, as well as in all to which our attention has been directed, injury resulted from a defective condition of a common stairway or landing, or defective appliances, of which the landlord had control. In each case it appeared that the tenant could not, without becoming a trespasser, make the repairs himself. If we apply this rule to the present case, does it aid plaintiff's contention? The use of hallways and stairways was undoubtedly appurtenant to plaintiff's landed interest. He had the right to use these passageways for ingress and egress. In reason, why might he not have used them also for the purpose of reaching the roof to have the flue to his chimney swept?

We think it clear that he had this right.  Control over the flue of plaintiff's chimney was not reserved to the landlord either expressly or by implication.  The plaintiff's access to, and right to care for, this flue, as a part of his premises, can be no less because there were other flues to the same chimney in use by other tenants.  Plaintiff's flue could be cleaned without molesting the other flues. We think that, independent of the ordinance, the defendant was not liable for the consequences of the casualty.

The ordinance referred to reads as follows:

" It shall be the duty of every owner, agent, or occupant of any building within the limits of the city of Detroit to have the chimneys of such building swept at least once in each year, providing that the same has been used for carrying off of smoke for the consumption of wood or soft coal."

Without determining whether the ordinance could be invoked by any other than the public, or whether, on the other hand, it is to be construed as a purely penal statute, it is enough for the purposes of this case to say that the very terms of the ordinance indicate that there was no *purpose* of fixing the duty of keeping the chimneys cleaned, as between the owner and occupant.

No error is found.

Judgment affirmed.

CARPENTER, MCALVAY, GRANT, and HOOKER, JJ., concurred.