Argued at Pendleton May 4, affirmed as modified June 21, 1921.

## HIGINBOTHAM *v.* WOLFORD.

(198 Pac. 923.)

**Landlord and Tenant—Breach of Lease Held not Ground for Cancellation.**

1. Where lessee of farm, under lease entitling lessor as rental to certain portions of the crop raised and to certain pastures, was in the actual possession of the land, giving it his personal attention, lessee's noncompliance with lease as to care of land, his failure to account to lessor for her half of the pasture, or the proceeds of about one ton of alfalfa, or the little hay that he fed to his hogs, and his violation of lease permitting another to use a small portion of the land, and the use of the barn for one team, not decreasing lessor's share of the rental, was not ground for cancellation of lease in equitable actions therefor, in the absence of allegation that lessee was insolvent, and in the absence of a showing that the loss to the estate itself, if any by reason of breach, would be nominal; the lessor having a complete and adequate remedy at law.

**Landlord and Tenant—Forfeiture of Lease not Decreed for Mere Nominal Technical Violation.**

2. Equity will not decree the forfeiture of a lease for a mere nominal technical violation, but there must be something that goes to the substance or merits, or which would at least tend to show waste, destruction or injury to the estate itself.

**Landlord and Tenant—Provisions of Lease as to How Land Should be Farmed Substantial Considerations for Leasing.**

3. Provisions of lease, merely specifying how the land should be farmed and what lessee should do toward upkeep of farm, were substantial considerations for the leasing.

**Dismissal and Nonsuit—Dismissal of Lessor's Suit to Cancel Lease Should be Without Prejudice to Rights of Either Parties.**

4. Dismissal of lessor's suit for cancellation of lease for lessee's noncompliance therewith, on the ground that the alleged breach did not injure the estate itself and that lessor had an adequate remedy at law, should be without prejudice to rights of either party.

From Umatilla: Gilbert W. Phelps, Judge.

In Banc.

November 11, 1918, and for a period of five years from that date, the plaintiff made a lease to the defendant of her certain farm near Echo, in Umatilla County, and certain machinery and utensils for which she was to receive as rental one half of the annual crop of hay in the stack and one half of the grain raised for the year 1919, one fourth of the grain for the years 1921 and 1923 delivered at the warehouse free of all expense to the plaintiff, and certain pastures. The defendant took possession under the terms of the lease which provides:

"If the party of the second part shall fail in any particular to carry out the terms of this lease, and particularly if he shall fail to properly care for, irrigate and harvest the portion of the alfalfa or the grain belonging to the party of the first part, then the party of the first part may at her option declare this lease terminated and may take possession of said premises, and shall not be taken as violating the rights of the party of the second part to compensation as herein provided for except on the new lands that he may have seeded to alfalfa."

For a number of alleged breaches, the plaintiff commenced this suit on August 21, 1919, in which she prays for an accounting and decree for the amount

found due and damages in the sum of $2,100, for the loss of the wheat crop and the careless and negligent operation of the ranch, and the misuse of the irrigation waters and the failure to seed the alfalfa as the lease provides and damage to the premises, for the cancellation and termination of the lease, that the defendant be ousted and the plaintiff be restored to her former estate. For answer the defendant admits the execution of the lease and his entry and denies all other material allegations of the complaint, and as a further and separate defense alleges that he farmed the premises in a good and husbandlike manner, took proper care of the alfalfa sown and growing and spring-toothed the land and irrigated it in accord with the course of good farming in the locality; that at the time suit was commenced, the last crop of hay had not been stacked, "nor had the period of thirty days elapsed mentioned in the said lease when the said hay should be measured and divided between the said plaintiff and this defendant"; that the crop of grain for the year 1919 was of no value and would not pay to harvest it and that under the terms of the lease plaintiff is entitled to one half of the crops for pasturage purposes; that any failure to repair and construct certain fences was because the plaintiff did not furnish the material and the fact that McCormmach claimed to be the sole owner of the line fence; that the manure at the barn was properly used and spread on the alfalfa lands or used in the dams and levees, and that none of it was sold or moved from the premises. In substance, the defendant denies that he violated any of the provisions of the lease and claims that he substantially complied with all of its terms and that by reason of the wrongful act of the plaintiff in entering upon the premises

in violation of the lease and injuring the growing hay, he was damaged in the sum of $1,000, for which he prays for a decree against the plaintiff and that she be enjoined from trespassing on the premises or interfering with his possession. The reply is a general denial. After the taking of testimony, the court made findings that the lease was duly executed and that under it the defendant entered and took possession of the premises; "that defendant substantially performed all the terms and conditions of the said lease upon his part to be kept and performed," and rendered a decree against the plaintiff dismissing her suit, and for costs to the defendant, from which the plaintiff appeals claiming that the court erred in its findings and in decreeing that the suit should be dismissed, "and in failing to decree such dismissal without prejudice to another suit by appellant upon the same cause."    AFFIRMED AS MODIFIED.

For appellant there was a brief over the name of *Messrs. Raley, Raley & Steiwer,* with an oral argument by *Mr. Steiwer.*

For respondent there was a brief over the name of *Messrs. Fee & Fee,* with an oral argument by *Mr. James A. Fee.*

JOHNS, J.—It will be noted that the lease was executed on November 11th, and that the complaint was filed on August 21, 1919. By its terms, defendant agrees that he will farm in a good and husbandlike manner during the period of the lease; that he will properly care for the alfalfa now sown and growing and spring-tooth it and carefully irrigate it according to good husbandry in the locality; at the proper time he will cut and properly stack it at his own ex-

pense; that thirty days after stacking the last crop it shall be equally divided. Second, as to the wheat now growing, for the year 1919, one half of it shall be delivered to the warehouse in bulk; if it does not have any value, each shall have one half for pasturage. Third, he will plow, cultivate, harrow and seed by·the summer-fallow method and see that a crop of grain is raised during the years 1921 and 1923 and deliver one fourth of all the grain to the warehouse; to keep the fences in good repair, new material if any necessary to be taken from the line fence on the ranch between the lands of McCormmach and the plaintiff. He agrees that he will break up, level, and seed to alfalfa all of the lands known as alfalfa lands, which can be irrigated; the same to be leveled and made suitable for alfalfa; that he will plant to alfalfa and such nurse crops as he may think best; that he will put the lands in shape and seed them as fast as he can reasonably do so, so that on November 1, 1919, five acres will be seeded, and on November 1, 1920, twenty acres, and on November 1, 1921, one hundred acres, November 1, 1922, one hundred and fifty acres and at the end of the lease all of the land north of the Western Land and Irrigation Company shall have growing a good crop of alfalfa. The defendant shall have all nurse crops and the hay shall be divided equally. The reasonable value of putting the new land in alfalfa is $50 an acre. The plaintiff shall look solely to the one-half interest in the crops which belongs to him and shall turn over to the defendant on October 1st of each year enough hay to pay for the value of the work done, etc. In leveling and seeding and ditching the land, it is to be handled on the check plan and approximately one acre is to be placed in each check per square, all manure produced at the

barn is to be distributed annually and properly spread upon the alfalfa lands and no manure is to be sold or removed.

The defendant agrees that in spring-toothing, he will reseed such portion of the lands as are thin or in his judgment need reseeding; to keep up all ditches and keep them free from weeds and construct such new portion as may be necessary. Each year he will perform such work upon the Allen ditch as the plaintiff is obliged to perform to hold the ownership, the same being one fifth. He will keep the water on the pasture to hold the water level, the main ditch shall be large enough to carry all of the waters of the Allen ditch; that pasture to be divided equally and any pasture sold divided equally; no stock shall be pastured upon the alfalfa in the fall of any year after it has been eaten down and none shall be pastured after the first of March; to keep all outside fences in good repair, plaintiff to furnish necessary materials; plaintiff to have space in the barn for herself or feeder and reserve the right to feed her portion of the hay upon the premises; defendant to have the use of farm machinery and hay machinery and keep it in repair; property not to be subleased or any sale or assignment without written consent; plaintiff to have the right to enter at all reasonable times.

For a cause of suit and as damages for a violation of the lease the plaintiff alleges that defendant "has failed to farm and care for the said premises in a good and husbandlike manner and has failed to irrigate carefully the alfalfa growing thereon"; that he has used excessive waters in irrigation and has caused seepage to raise and bring the alkali to the surface; that the injured land amounts to about fifteen acres and that all of it is damaged by excessive water; that

defendant did not cut the alfalfa in a careful and proper manner but cut it poorly and unevenly and left much of it attached to the roots; that he has stacked the hay improperly in small insecure stacks and except in one or two places has stacked it upon good alfalfa land; that he failed to place any beams or timbers under it; that he neglected to separate the good hay from the weeds, which materially injured the quality of the hay; that the improper mixing of the weeds with the hay and the improper stacking resulted in plaintiff's damage, the amount of which plaintiff is not able to state at this time; that at various times the defendant did pasture his hogs upon the growing alfalfa in which the plaintiff had a half interest; that the hogs were pastured on the alfalfa long after stock should have been removed and were there about May 24th; that by reason thereof not less than forty head of hogs and pigs ran in and upon and destroyed the growing grain so that at least one half of it was ruined by the hogs and was unfit to cut; that the other eighty acres was not entirely injured and that some of it could have been harvested and that one half of it belonged to the plaintiff; that it did not yield more than six or seven bushels per acre and on account of the short crops, the defendant refused to harvest it; that by reason thereof plaintiff lost her half interest in the wheat crops of at least three bushels per acre upon eighty acres, to her damage in the sum of $500; that on account of the injury to the crop by the hogs she suffered a loss of seven bushels per acre upon the remaining eighty that was totally destroyed, and for that portion thereof which was partially destroyed, she was damaged to the amount of $1,600; that the defendant violated the lease by failing to distribute the manure and in using it for

the construction of temporary dams "for the diversion and holding of water in the irrigation of the premises referred to in said lease"; that plaintiff cannot state the amount of her damage by reason of such failure, but that it was "a substantial damage to plaintiff." In paragraph 16 of the complaint it is alleged that the defendant violated the lease by failing to keep the ditches free and clear of weeds; that all of the land except the wheat land is irrigated and adapted to the raising of alfalfa; that it is valuable with the water and is of no value without the water; that the plaintiff's water rights have been adjudicated; that to perfect such inchoate right as to 200 acres described in the complaint as pasture land, it is necessary that such lands should be irrigated, reclaimed and planted to agricultural crops; that the lease provides that the defendant should irrigate the meadows and it was intended that the pasture should be irrigated until it was seeded to alfalfa and thus protect plaintiff's water rights; that the defendant has failed to irrigate the pasture land and has plowed up about 100 acres of it and has made no effort to seed it to alfalfa and that the season is now too late for that purpose;

"that on account thereof the said salt grass meadows have been injured in a considerable sum of money and plaintiff is damaged thereby, and particularly on account of said default and violation, the plaintiff's inchoate water right is placed in jeopardy and will be lost to plaintiff unless plaintiff can enter upon the said premises and rectify the injury."

In paragraph 17 it is alleged that the defendant failed to construct the irrigating ditches and instead of building the one described in the lease, he enlarged a lateral and that such enlargement was a distinct injury to the land of the plaintiff for the rea-

son of which he is damaged in a considerable sum. In paragraph 19 it is alleged that defendant has caused other injury to plaintiff's damage by negligently and carelessly operating the farm through the willful disregard of plaintiff's rights and if his possession is continued, he will destroy "to a very large extent the value thereof, all to plaintiff's irreparable injury"; that he plowed up a raspberry patch and has failed and neglected to care for and spray the orchards; "that the pasture land which was plowed up by the defendant as aforesaid can be saved to plaintiff by the expenditure of a considerable amount of money, probably $25 or $50 per acre"; that upon the termination of the lease the plaintiff will "re-enter said premises at her own expense and so far as possible repair the injury which has been done to said land by the defendant." In substance, the above are the grounds for which plaintiff claims damages on account of the alleged violations of the lease. For want of proof, the appellant frankly says in her brief that "the claim for damages was substantially abandoned by appellant upon the trial and is not involved in the appeal." By reason of such admissions and the failure of proof to sustain the complaint made, the question of damages as to all of the above specified alleged violations of the lease are eliminated from the consideration of this case. By analysis, the following questions are left, that the defendant violated the lease by selling about one ton of alfalfa hay for which he has not accounted to the plaintiff and that he cut and fed a small portion of alfalfa to his hogs; that he has failed to keep the fences on the wheat land in repair; that he failed to distribute the manure on the lands and used it for the construction of temporary dams to hold the water for irrigation purposes; that

it was intended by the plaintiff that the pasture should be irrigated until such time as the defendant would plant and seed it to alfalfa; that after plowing the pasture, he has made no effort to seed it and that it is now too late in the season to secure a good stand because there will not be sufficient water for its irrigation until October or November; that at one time the defendant had at least 75 head of stock upon the pasture for which he received $2 per month per head and that he has refused to account to the plaintiff for her share of the pasturage; that he leased about 20 acres of the land including room in the barn for a team of horses and the use of plaintiff's wagon "without the written or other consent of the plaintiff first obtained" for which he received about $75; and that he has failed to account for that money. The primary purpose of this suit is to obtain a decree for the forfeiture of defendant's lease, for a violation of its provisions, and that plaintiff be restored to her former state. Appellant cites *Matthews* v. *Digges,* 188 Pac. 283, in which the lease contained an agreement that the lessees would "use reasonable efforts to poison squirrels upon said leased property, the party of the first part at his own cost and expense to furnish the necessary poison." For a failure to comply with this provision the lease was forfeited. That was an action at law in which the trial court found that "the covenant had been broken so as to entitle the plaintiff to declare a forfeiture of the lease and to recover possession of the premises in this action." The opinion says:

"The evidence, it is true, is conflicting as to both of these matters, but the trial court resolved these conflicts in the plaintiff's favor, as it was entitled to do, and with its findings and conclusions in so doing we are not at liberty to interfere."

In *Anderson* v. *Hammon,* 19 Or. 446 (20 Am. St. Rep. 832, 24 Pac. 228), this court held:

"Where the neglect and omissions of the defendants to perform their obligations under a lease resulted in waste, which, if permitted to continue, must eventually result in the ruin and destruction of its subject matter to the irreparable damage of the plaintiff; held, that equity would interfere and cancel the lease to prevent such waste and destruction."

That grew out of a lease of a bearing orchard, which required skill, constant care and attention and it appeared from the evidence that the defendant went to California and the court held that through defendant's neglect, waste was committed which tended to impair and destroy the value of the orchard itself and that it became infected with insect pests "which seriously injured the healthful condition of the trees, killing some and causing others to go into decay."

1, 2. In the instant case the proof shows that the defendant is in the actual possession of the premises giving them his personal attention and that the loss, if any, to the estate itself would be nominal. There is no allegation that defendant is insolvent, and assuming that he did fail to account to the plaintiff for her half of the pasture or the proceeds for about one ton of alfalfa hay which it is claimed that he sold, or the little hay which it is alleged that he fed to his hogs, for that plaintiff would have a complete and adequate remedy at law. It is also claimed that he violated the lease in the renting of about 20 acres of the land and in the giving of permission for the use of the barn for a team. That was more in the nature of a license and was not an assignment of the lease or a subletting; and was for only a small portion of the pasture land and of the barn and could not in the

least impair or go to the destruction of the estate and would not in any manner decrease plaintiff's share of the rental. The rule is fundamental that equity will not decree the forfeiture of a lease for a mere nominal technical violation. There must be something which goes to the substance or the merits or which would at least tend to show waste, destruction or an injury to the estate itself. As stated, the lease was executed on November 11, 1918, for a period of five years, and the suit was commenced on August 21, 1919, before the last crop of alfalfa was cut and in the stack and for want of evidence plaintiff frankly admits that there is not proof of the alleged damages for violation of the lease. At the time the suit was brought, the violations of the lease on the part of the defendant, if any, were only nominal. We agree with the trial court "that defendant substantially performed all of the terms and conditions of said lease upon his part to be kept and performed."

3, 4. The land is valuable and the lease was carefully drawn and clearly specifies how it should be farmed and what the defendant should do. Those provisions are important to the plaintiff and were substantial considerations for the leasing and it is the duty of the defendant in good faith to carry out the lease. The lower court decreed that the suit should be dismissed. All things considered and in the interest of justice, the suit should have been dismissed without prejudice to the rights of either party and that will be the order of this court, otherwise the decree is affirmed, with costs to the respondent.

AFFIRMED AS MODIFIED.