Motion to dismiss appeal denied September 29; rehearing denied
November 3, 1931; argued and submitted on merits at
Pendleton February 16; reversed March 8;
rehearing denied April 12, 1932

## PECK *v.* ROSS

(3 P. (2d) 126, 8 P. (2d) 780)

324

George H. Brewster, of Redmond, for the motion.

A. C. Shaw, of Portland, Percy A. Cupper, of Salem, and N. G. Wallace, of Bend, opposed.

■ BEAN, C. J. Respondent moves to dismiss this appeal for the reason that this court has no jurisdiction thereof. It is not specified wherein jurisdiction is wanting, but from the argument we find that it is claimed by respondent that appellant should have filed an undertaking under section 5-221, Oregon Code 1930. The statute relating to forcible entry and detainer provides, in part, that if judgment be rendered against the defendant for the restitution of the real property described in the complaint, no appeal shall be taken by the defendant from such judgment until he shall, in addition to the undertaking now required by law upon appeal, give an undertaking to the adverse party for the payment to the plaintiff of twice the rental value of the real property, of which restitution shall be adjudged until final judgment. This undertaking is held to be jurisdictional. Zelig v. Blue Point Oyster Co., 54 Or. 543 (104 P. 193).

■ The present suit was brought for the purpose, among others, of rescinding a lease of certain real property and also for the possession of the real property and certain personal property, and for an accounting for rents thereof. It is not an action of forcible entry and detainer.

Section 7-504, Oregon Code 1930, provides that the appellant shall give an undertaking for damages, costs and disbursements, which may be awarded against him on appeal. Such undertaking does not stay the proceedings, unless the undertaking further provides:

"2. If the judgment or decree appealed from be for the recovery of the possession of real property, for a partition thereof, or the foreclosure of a lien thereon, that during the possession of such property by the appellant he will not commit, or suffer to be committed, any waste thereon, and that if such judgment or decree or any part thereof be affirmed, the appellant will pay the value of the use and occupation of such property, so far as affirmed, from the time of the appeal until the delivery of the possession thereof, not exceeding the sum therein specified, to be ascertained and tried by the court or judge thereof;

"3. If the decree appealed from require the transfer or delivery of any personal property, unless the things required to be transferred or delivered be brought into court, or placed in the custody of such officer or receiver as the court may appoint, that the appellant will obey the decree of the appellate court. The amount of such undertaking shall be specified therein, and be fixed by the court or judge thereof." § 7-504, Oregon Code 1930.

■ The transcript of record shows that the appellant in the suit filed an undertaking, as provided by section 7-504. The appeal should not be dismissed. We think the undertaking in this case is governed by section 7-504, and, so far as appears, that it is sufficient.

It is shown from the record that respondent gave a counterbond and that the appellant does not retain possession of the personal property and real estate.

There is a further motion to dismiss, filed for the reason that the transcript of testimony filed herein does not contain all of such testimony. The transcript of testimony has attached to it the certificate of the official court reporter to the effect that it is a full, true and exact copy of all the testimony submitted in the cause. The certificate of the honorable trial judge shows that there is a large portion of the testimony, which was introduced in the case, not contained in the transcript of testimony. It is not claimed by the respondent that it was the fault of appellant that a full transcript of the testimony was not filed.

The transcript of testimony filed herein will therefore be ordered to be returned to the clerk of the circuit court for Deschutes county, in order that the circuit court may take such proceedings as may be necessary to require E. M. Broderick, official court reporter, to prepare and file a complete transcript of testimony in said cause, appellant to pay for such additional transcript of testimony. It appears from the record that the time has been extended several times for the preparation of such transcript of testimony.

The motions to dismiss the appeal are denied.

---

ON THE MERITS
(8 P. (2d) 780)

*A. C. Shaw,* of Portland, and *Percy A. Cupper,* of *Salem* (N. G. Wallace, of Bend, on the brief), for appellant.

*George Brewster,* of Redmond, for respondent.

BELT, J. On February 1, 1929, E. E. Goucher, a physician and surgeon who resided at McMinnville, Oregon, entered into a written agreement with the defendant, George M. Ross, whereby 400 acres of his "Cline Falls Ranch" consisting of 1,300 acres located in Deschutes county, Oregon, was leased to the defendant for a period of three years. Under the terms of this lease, it was provided that "said Ross shall properly prepare, cultivate, and crop said land at his own expense, save that the expenses of one farm hand shall be borne equally by said parties, profits arising from the operations of said land to be divided equally between said parties at the end of each crop year." It was also stipulated therein that "said Ross shall not transfer, sell, or assign any interest in said premises or this lease without the written consent of said E. E. Goucher." There was no provision for reentry or forfeiture in the event of a breach of any of the covenants in the lease. The remaining portion of the ranch, consisting of 900 acres, was leased by Goucher to J. E. Brown and J. H. Robinson, which lease was to terminate on February 1, 1932. However, this lease was, by written agreement, canceled and under the terms of such agreement the rights of the lessees were to terminate on February 1, 1930, but it was provided that they should have until April 15, 1930, to remove their sheep pastured on the ranch. On February 1, 1930, Goucher, by oral agreement, leased this 900-acre portion of the ranch to the defendant George M.

Ross for a period of two years under the same terms as provided in the written lease executed on February 1, 1929, for the westerly 400-acre part of the ranch. On July 26, 1930, Goucher sold and transferr to E. M. Peck the entire ranch together with certain livestock, farming machinery and equipment used in connection with the operation thereof and belonging to Goucher. It is to be remembered that the oral and written leases of Ross expired on February 1, 1932.

After the purchase of this property by the plaintiff, he instituted this suit for the purpose of obtaining: (1) An accounting for the rents and profits due Goucher under the terms of the lease which claim it is alleged had been assigned to the plaintiff; (2) an accounting for all livestock and equipment purchased by Ross from funds advanced to him by Goucher for such purpose, and to impress a trust thereon in favor of the plaintiff by reason of the alleged assignment of such claim by Goucher to the plaintiff; and (3) a cancellation of the lease by reason of (a) an alleged breach of a covenant against assignment in that Ross rented a house located on the ranch to C. F. Perrin at a rental of $10 per month from February 1, 1929, to and including the month of September, 1930; (b) breach of covenant by assignment of a one-half interest in the lease to F. F. Wright, without the consent of the plaintiff or his predecessor in interest; and (c) failure to pay rental.

The defendant, in answer to the complaint, denied any breach of the covenants of the lease or that there were any rents or profits to be accounted for to the plaintiff or to Goucher. As a further and separate answer, the defendant alleges that he has complied with all the terms and conditions of the lease on his

part to be kept and performed and that the sum of $2,300 which Goucher advanced for the purpose of operating the ranch was fully accounted for prior to the time plaintiff acquired title to the property from Goucher. It is also alleged, as a second and further answer and by way of counterclaim, that the plaintiff wrongfully and maliciously caused irrigation waters appurtenant to the land leased by defendant to be diverted therefrom, whereby he sustained damage to his crop and injury to the land in the sum of $5,000. Plaintiff, in his reply, denied the new matter alleged in the affirmative answer.

On the issues thus briefly stated, the court, after hearing, decreed a cancellation of the lease and ousted the defendant from possession, but denied plaintiff the right to an accounting by reason of the $2,300 advanced by Goucher to the defendant. It was further decreed that the defendant was entitled to the "full, complete, and exclusive possession" of certain livestock and farming equipment located upon the ranch. No damages were decreed to defendant on his counterclaim by reason of diversion of water. Defendant appeals.

In our opinion, the motive which prompted this lawsuit was unquestionably the desire to obtain the valuable water right appurtenant to the Cline Falls Ranch. When Ross refused to accept an offer of $4,500 made by representatives of the Central Oregon Irrigation District for the use of water for the months of July and August, 1930, which was to be diverted from the ranch to the irrigation district, the plan to purchase the land from Goucher was formulated. Hence, on July 26, 1930, the plaintiff, as trustee for the Central Oregon Irrigation District, entered into a contract with Goucher to purchase the property in question. The

day that the deal was consummated, plaintiff telephoned to the water master that there was no further need of water on the Cline Falls Ranch for the year 1930. In this connection it is only fair to state, however, that it is the contention of plaintiff that the ranch had already received the full amount of water to which it was legally entitled under the decree of this court.

Notwithstanding the careless and slovenly manner in which Ross transacted business, as evidenced by his failure to keep any account of funds advanced for the operation of the ranch, Dr. Goucher was apparently satisfied. He had the utmost faith in the integrity of his tenant. Dr. Goucher was well along in years and, no doubt, was busy in the practice of his profession, trying to earn enough to carry on his farming operations. That he placed implicit confidence in Ross is shown in his authorization to Ross to sign his name to the agreement effecting the cancellation of the Brown-Robinson lease in 1930. Indeed, Brown said that "Ross done the leasing" and that he never saw Goucher. Never did the good doctor ask Ross to account for anything. Ross was even authorized to purchase an 80-acre tract for him and, although the wrong tract was purchased, Goucher never complained, so far as the record discloses. If there was any breach of covenant in the lease by Ross, it is certain that Goucher did not assert it as a ground for forfeiture or cancellation. When the ranch was sold to the plaintiff, Dr. Goucher made it plain that "Ross was to go on with the place" and that the purchaser must make his peace with the tenant. Dr. Goucher said he "never authorized Peck or any one else to move this machinery before the expiration of Ross's lease." Upon what does the plaintiff, who purchased the property subject to the lease, base his right to cancellation?

■ In 1930, there was produced on the ranch approximately 30 tons of hay and 35 sacks of potatoes, but no grain. It is apparent that the lease did not provide for a division of the crops but contemplated that, at the end of each crop year, the profits arising from the operation of the ranch should be divided equally between the landlord and the tenant. Ross testified that, since he took possession of the ranch in May, 1927, under a lease substantially the same as that executed in 1929, the expenses in the operation of the ranch had always exceeded the proceeds from the sale of the crops produced. There is no evidence to the contrary and Goucher, although called as a witness for the plaintiff, never asserted that Ross had failed to account to him for anything due under the lease. We are unable to agree with the contention of the respondent that the lease should be construed to mean that there should be an equal division of the crops. In the lower court the respondent stipulated a waiver of any rental due from Ross but, nevertheless, relied upon his failure to pay rent as a breach of covenant upon which to base a forfeiture of the lease.

■■ Since the plaintiff has not appealed from that part of the decree denying him the right of an accounting for the $2,300 advanced by Goucher, we need pay no further attention to that phase of the case. Relative to the alleged assignment of the one-half interest of the lease to Wright as ground for the cancellation of the lease, it may be said that the proof does not support the claim of assignment. Wright had leased a ranch about four miles north of the Cline Falls Ranch and it appears that Ross and he entered into some sort of a cropping contract whereby Wright was to assist Ross in return for the services rendered, was to receive a in the operation of the ranch leased from Goucher and,

certain portion of the crops. Ross, however, did not surrender supervision and management. Such an agreement is not equivalent to an assignment of the lease: *Easley Coal Company v. Brush Creek Coal Company*, 91 W. Va. 291 (112 S. E. 512); 35 C. J. 991. Neither does it constitute a sub-letting. There is no merit in the claim that the lease should be forfeited by reason of the rental of the house on the ranch to C. F. Perrin, an employee of the Pacific Power & Light Company. Perrin occupied this house with the knowledge and consent of Goucher prior to the time the ranch was leased to Ross. When Ross went into possession he insisted that the Pacific Power & Light Company pay a rental of $10 per month. The rental thus received might be a matter to take into consideration in the event of an accounting, but affords no basis for the cancellation of the lease. The main house on the ranch was occupied by Ross. At most, this rental to Perrin would constitute only a technical violation of a covenant against assignment insufficient to cause a forfeiture of the tenant's interests: *Higinbotham v. Wolford*, 101 Or. 53 (198 P. 923). Further, it is asserted that Ross violated the covenant against assignment when he entered into an agreement with Brown under the terms of which he leased eighty acres included in the Cline Falls Ranch for a period of one year. Under this alleged oral lease, which it is claimed was made at the time the Brown-Robinson lease was canceled, Ross was to receive, as rental, one-fourth of the crop. Ross denies having made such a lease and it is highly improbable that he did, in view the the stipulation in the written cancellation agreement that Brown should have until April 15, 1930, to remove his sheep. At any rate, the evidence does not preponderate in favor of the plaintiff upon this issue of the case.

In view of the conclusion that the record does not disclose any breach of the covenant against assignment of the lease, it is unnecessary to consider whether such a breach would, in the absence of any stipulation in the lease relative to a re-entry or forfeiture, terminate the interests of the tenant. *Meyer v. Livesley,* 45 Or. 487 (78 P. 670, 106 Am. St. Rep. 667), and *Randall v. Chubb,* 46 Mich. 311 (9 N. W. 429, 41 Am. St. Rep. 165), hold that such a breach of covenant, where the contract involves work of a personal character, would work a forfeiture, but such rule is unquestionably contrary to the overwhelming weight of authority: Thompson on Real Property, vol. 2, section 1430; Tiffany on Landlord and Tenant, section 152; Underhill on Landlord and Tenant, section 389; 35 C. J. 1065, citing numerous cases in support of the text.

It is clear, under the agreement of sale from Goucher to plaintiff, that the latter acquired ownership of the livestock and farming equipment, as decreed by the lower court, but, since the tenant's interests had not been terminated or forfeited, plaintiff would not be entitled to deprive Ross of their use until the expiration of the lease.

Relative to the counterclaim of defendant for damages alleged to have been sustained on account of being deprived of the use of water, we are unable to ascertain from the record, with any degree of certainty, the extent of his damages. The water was shut off after the crops had matured and, while it is believed that some damage was sustained, there is no evidence upon which to base a finding as to the amount which should be awarded.

Having concluded that the defendant was wrongfully evicted, it follows that the decree of the lower court ousting the defendant from possession must

be reversed. Since the lease by its terms expired February 1, 1932, the only redress for the defendant is to seek damages by reason of the wrongful eviction. He has had his day in court relative to the claim of damages arising from the diversion of the water and this cannot again be put in issue. However, he would be entitled to damages which were the direct, natural, and proximate result of the act of the plaintiff in wrongfully terminating his lease. To give complete relief, equity will retain jurisdiction and remand the cause to the lower court with directions to permit the parties to file supplementary pleadings and to take testimony upon the issues thus made, to determine the damages sustained. Defendant is entitled to his costs and disbursements here and in the lower court.

BEAN, C. J., and BROWN, J., concur.

CAMPBELL, J., dissents.

---

Petition for rehearing denied April 12, 1932

## ON PETITION FOR REHEARING

BELT, J. In a petition for rehearing pregnant with caustic comment rather than reason and logic, counsel for plaintiff urges error in the original opinion. Counsel with hope forlorn asserts: "It is almost impossible to get one judge to admit that he is wrong, but to have three judges admit they have erred would be almost a miracle"—and then, in utter despair, he further opines: "We have an additional obstacle in this case as the court's opinion clearly shows that the majority feel that neither plaintiff nor his counsel have acted in good faith and that plaintiff's witnesses are false." Whether judges are thus afflicted with

pride of opinion is a matter we prefer to leave to the charity of the bar. We disclaim any intention to reflect upon the good faith of counsel or his client. We do not say that plaintiff and his witnesses are willfully false. "Mistaken" is a more appropriate word.

The voluminous record in this case was carefully considered. It would serve no good purpose to answer again the contentions of the plaintiff. Convinced against his will he would probably be of the opinion still.

The petition for rehearing is denied.