Argued at Pendleton October 30; affirmed November 28, 1933; rehearing denied January 23, 1934

## PECK *v.* ROSS

(26 P. (2d) 1081, 28 P. (2d) 848)

*Percy A. Cupper,* of Salem (Percy A Cupper of Salem, Carey, Hart, Spencer & McCulloch, of Portland and N. G. Wallace, of Bend, on the brief) for appellant.

*George H. Brewster,* of Redmond, for respondent.

BELT, J. On July 26, 1930, plaintiff, as trustee for the Central Oregon Irrigation District, purchased from Dr. E. E. Goucher and wife 1,300 acres of land in Deschutes county, subject to the lease of the defendant, which expired February 1, 1932. Soon after the purchase plaintiff instituted a suit for cancellation of the lease and for an accounting. The lower court entered a decree of cancellation and ousted the defendant from possession. Upon appeal to this court the decree was reversed and the cause remanded with directions to take further testimony to determine the amount of damages sustained by reason of such wrongful eviction (*Peck v. Ross*, 139 Or. 323 (3 P. (2d) 126, 8 P. (2d) 780)). After hearing upon the issue of damages, the circuit court entered a decree in favor of the defendant Ross for the sum of $741.64, together with his costs and disbursements. The plaintiff filed a notice of appeal, but later concluded to abide by the decree of the circuit court. Defendant appeals.

■ What was defendant's damage by reason of the wrongful eviction? Turning to the lease we find that under its terms, Ross was to "properly prepare, cultivate, and crop said land at his own expense, save that the expenses of one farm hand shall be borne equally by said parties, profits arising from the operations of said land to be divided equally between said parties at the end of each crop year". In view of the clear and explicit language of the lease, the trial court very properly charged against Ross the total cost of production and operation of the ranch and then deducted the same from the gross receipts. After making such deduction, the net profits were divided equally between the plaintiff and the defendant. We do not agree with appellant that half of the cost of production and operation should

be charged to Peck. If such was the intention of the parties to the lease, the clause therein relative to the expense of one farm hand which was to be borne equally would be superfluous. The method of computation followed by the trial court is approved.

■■ Ross asserts that had he not been ousted he would have, during the year 1931, made a net profit of $4,860.52 from the operation of the ranch. Reference to the following statement of account submitted by defendant will disclose the matters in controversy which resulted in a four days' trial.

| | Gross Value | Cost of Production | Total Profits |
|---|---|---|---|
| Wheat | $ 4,207.50 | $ 857.41 | $ 3,350.09 |
| Alsike | 3,024.00 | 1,082.25 | 1,941.75 |
| Ladino | 157.50 | 19.35 | 138.15 |
| Clover Straw | 252.00 | | 252.00 |
| Potatoes | 2,817.00 | 918.75 | 1,898.25 |
| Rye | 658.00 | | 658.00 |
| Pasture | 252.00 | | 252.00 |
| Turkeys | 990.00 | 360.00 | 630.00 |
| Butter fat | 270.00 | | 270.00 |
| Perrin House | 110.00 | | 110.00 |
| Total | $12,738.00 | $ 3,237.76 | $ 9,500.24 |
| Hired Hand (Wages deducted from total profit) | | | 600.00 |
| Joint Profits Peck and Ross | | | $ 8,900.24 |
| Ross's share, one-half | | | 4,450.12 |
| Ross's individual damages: | | | |
| House in which he lived | | $ 180.00 | |
| Garden and orchard | | 144.00 | |
| Milk for family use | | 86.40 | 410.40 |
| Ross's total damages | | | $ 4,860.52 |

It is disclosed from the transcript of evidence in the suit for an accounting—which is made a part of this record—that no profits were made under Ross's lease. Although farming continuously from the date he took possession in May, 1927, until he was ousted in February, 1931, he had always operated at a loss. He produced in one year only 30 tons of hay. No grain was harvested. In 1929 he sold 70 sacks of potatoes. In 1930, 30 or 35 sacks of potatoes were produced. However, when he was on the receiving end and the positions of the parties were reversed, he claims great profits would have resulted had he been permitted to remain in possession of the leased premises. The productivity of the ranch increased astoundingly. The earning capacity of Ross under the issues of this case would make many farmers turn green with envy. The situation is somewhat analogous to that where a steer is killed on a railroad track. The market price goes up like mercury before a noonday sun.

Ross testified that had he not been ousted he would have planted 187 acres of wheat, that this acreage would have yielded 40 to 45 bushels per acre and that he would have sold the wheat at 75 cents per bushel. The trial court, in computing the amount of damages, allowed Ross credit for 130 acres of wheat with a yield of 30 bushels per acre at a market price of 37 cents per bushel. One of the 60-acre tracts which was included in the acreage estimated by defendant was, according to the clear preponderance of the testimony, not adapted to wheat growing in that it was non-irrigable. We are convinced that the finding of the trial court relative to this issue is liberal and that the defendant has no cause to complain. Notwithstanding the fact that only a small amount of potatoes had been produced in past years, the defendant's proposed crop of 30

acres of potatoes would, in his opinion, net a profit of $1,898.25, which was to be divided equally between the parties. In view of the market conditions and the cost of production, it is doubtful, in the light of the testimony, whether Ross would have made any profit had he actually planted 30 acres in potatoes. Defendant contends that there are 69 acres of blue grass pasture on this ranch and that 42 acres could have been rented at a price of ten dollars per acre. However, in 1930, when pasturage rentals were higher than they were in 1931, Ross rented the pasture at five dollars per acre. The trial court gave Ross credit for 27 acres of pasture at six dollars per acre. When Ross was sued for an accounting he claimed that the 24 turkey hens on the ranch were owned by his wife. Now it seems that title to these turkeys has become vested in him and had he not been disturbed in his possession he proposed to raise 360 turkeys and says that he could have sold them at 25 cents per pound.

It was wrong to oust this defendant from possession of this ranch in the middle of winter, and he is entitled to be fully compensated for the damages sustained. However, we think his claim is greatly exaggerated. If we estimate the damages in the light of what Ross actually accomplished during his several years' possession, it is certain that the finding of the lower court was in his favor.

This was a long and tedious trial. The trial court made a careful and painstaking examination of the record and it is believed that substantial justice was rendered. The decree of the lower court is, therefore, affirmed. It is deemed equitable, under all the circumstances of the case, that each party pay his costs and disbursements in this court.

CAMPBELL and BAILEY, JJ., not sitting.

Petition for rehearing denied January 23, 1934

On Petition for Rehearing
(28 P. (2d) 848)

BELT, J. In an earnest and able petition for rehearing counsel for appellant urges that error was committed in affirming the decree of the lower court since it affirmatively appears that the circuit court did not follow the method of computation approved by this court. Attention is directed to the following language in the opinion: "In view of the clear and explicit language of the lease, the trial court very properly charged against Ross the total cost of production and operation of the ranch *and then deducted the same from the gross receipts.* After making such deduction, the net profits were divided equally between the plaintiff and the defendant." The particular clause of the lease upon the construction of which counsel cannot agree is as follows: "Said Ross shall properly prepare, cultivate, and crop said land at his own expense, save that the expenses of one farm hand shall be borne equally by said parties, profits arising from the operations of said land to be divided equally between said parties at the end of each crop year."

█ In the case of *Peck v. Ross,* 139 Or. 323 (3 P. (2d) 126, 8 P. (2d) 780), wherein plaintiff was seeking an accounting against the defendant, the above provision of the lease was under consideration and it was held "that the lease did not provide for a division of the crops, but contemplated that at the end of each crop year, the profits arising from the operation of the ranch should be divided equally between the landlord and the tenant". We adhere to the construction that the lease does not contemplate a division of the crops. It is also clear from the language of the lease that Ross was to bear alone the cost of the operation of the ranch,

"save the expenses of one farm hand" which was to be borne equally by the landlord and tenant. If, as appellant contends, the cost of operation should be first deducted from the gross receipts, it must be apparent that Ross would not thus be charged with such costs. Such construction does violence to the lease. We are not unmindful that the ordinary lease is on a basis of one-third of the crop to the lessor and two-thirds to the lessee, but in the instant case the ranch was stocked and equipped by the plaintiff's predecessor in title, Dr. Goucher. We think it was the intention of the parties that Ross was to farm the ranch at his own expense, with the exception of one farm hand, and, after reducing the crops to money, to divide the same equally.

■ That part of the opinion to which counsel for appellant has directed attention and which is above quoted is not an accurate statement of the method of computation actually followed by the lower court. The trial court was right in dividing the profits and in charging against Ross the entire cost of operation. It is so provided in the lease.

In view of the farming conditions during the year in question and of the past achievements of Ross on the ranch, it is believed that the amount which was awarded to Ross is fair and equitable. It was wrong to evict Ross from the ranch, but his claim for damages is greatly exaggerated. The trial court made an earnest and sincere effort to compensate Ross for all the damages which he actually sustained. A further consideration of the records leads to the conclusion that the decree should be affirmed.

The petition for rehearing is denied.