Argued January 16; affirmed February 17, 1931

CLANTON *v.* OREGON KELP-ORE PRODUCTS
CO. ET AL.

(296 P. 30)

*George P. Winslow,* of Tillamook (Botts & Winslow, of Tillamook, on the brief) for appellant.

*T. B. Handley,* of Portland, for respondents, Nestucca Bay Sanitarium and Health Resort.

*L. E. Crouch,* of Portland, for all other respondents.

CAMPBELL, J. This is a suit brought by plaintiff against defendants for the purpose of quieting his title to four tracts of land situate in Tillamook county, Oregon. The land is described by metes and bounds in the amended complaint, and there is no dispute as to the particular land involved in this case. Plaintiff alleges that he is the owner in fee simple and in possession of the property, and that defendants claim some right, title or interest in and to the same, adverse to plaintiff.

The defendant, the Oregon Kelp-Ore Products Company, in its answer substantially alleges that it entered into a lease with Anna E. Christiansen, plaintiff's predecessor in title, covering the real property mentioned, for a term ending when all the kelp ore upon and beneath said real property shall have been exhausted, or it is impossible to properly mine and use the same; the minimum term of the lease being ten years; that it entered into possession pursuant to said lease and has complied with all the covenants, conditions and terms thereof, and is not in default. It is further alleged that certain of the stockholders, designated in the answer of said defendant, conspired to wreck and destroy this defendant, and to transfer all of its property and assets to another corporation, incorporated under the name of Nestucca Bay Sanitarium and Health Resort, and that plaintiff was a party to said conspiracy.

The defendant, the Nestucca Bay Sanitarium and Health Resort, in their answer, in substance alleges a lease from the Oregon Kelp-Ore Products Company, its codefendant, by which it acquired the use of the property in controversy for a period of twenty-five years beginning January 8, 1927; that the Oregon Kelp-Ore Products Company reserves the right to mine and store the kelp ore upon said premises and to sell the same therefrom.

The defendants, Mabel L. Smith and George F. Smith, answering to the same effect as the defendant, Oregon Kelp-Ore Products Company; and in addition alleged a mortgage executed by the Oregon Kelp-Ore Products Company to the defendant, Mabel L. Smith, dated October 1, 1925, to secure the payment of a promissory note in the sum of $15,000 with interest at the rate of 8 per cent per annum, due two years after

date, upon all the property described in the complaint, a part of which the Oregon Kelp-Ore Products Company holds in fee simple subject to the reserved mining right of Anna E. Christiansen, and the remainder being held by the Oregon Kelp-Ore Products Company under the lease therein referred to. A copy of the mortgage is attached and made a part hereof.

In a suit in the circuit court for Multnomah county, Joseph E. Dunne was appointed receiver for the defendant, Oregon Kelp-Ore Products Company. He was permitted to intervene in the instant cause and filed an answer as such receiver to the same tenor and effect as the answer of defendant, Oregon Kelp-Ore Products Company.

The plaintiff, in his reply to the various answers, denies that he in any wise participated in, or was a party to, any conspiracy or fraudulent conduct to deprive the defendants, or either of them, of their property; and alleges a breach of the terms and covenants of the lease and the deed from Anna E. Christiansen to the defendant, Oregon Kelp-Ore Products Company; and he further alleges in his reply that the lease above referred to is void for want of mutuality and definiteness and certainty. A copy of said lease is attached to his reply and made a part thereof. The substance of the copy of the lease attached shows a lease made by and between Anna E. Christiansen, referred to in said lease as the lessor, and the Oregon Kelp-Ore Products Company, a corporation, thereafter referred to in the lease as the lessee. The provisions, material to be considered in this case:

"First, the lessor, in consideration of the rents hereinafter reserved, and the covenants and agreements hereof to be kept, performed, observed and fulfilled by the lessee, has demised, let and leased unto

the lessee the following described real property situated in the County of Tillamook, State of Oregon, to wit:

\*　　　\*　　　\*　　　\*　　　\*

"From the first day of June, 1925, to and including the 31st day of May, 1935, the lessee paying the rent therefor and observing, performing and keeping all the covenants and agreements hereinafter provided on the part of the lessee, its successors and assigns, to be observed performed and kept.

\*　　　\*　　　\*　　　\*　　　\*

"The lessee will build and operate on the deeded premises and/or the premises herein demised buildings, bath houses and/or baths, for the purpose of using the ore on all or any of said deeded and demised premises, and in consideration of said deed, and of this lease, agrees to pay seventy-five dollars ($75) per ton for all such ore as may be used on said premises; and shall also pay five per cent (5%) of the gross receipts of the bath houses and receipts from the baths of said deeded and/or demised premises, or any part thereof, which said 5 per cent of said receipts shall be paid monthly on the 15th day of each month for the prior month; and the lessee guarantees that for the first year from the date hereof the lessor shall receive at least two thousand dollars ($2,000). If said 5 per cent of the receipts from the baths and the $75 per ton paid for the ore shall be less than the sum of $2,000, the difference shall be made up in cash by the lessee. For the second year, if said 5 per cent of the gross receipts from said baths and the sale of ore at $75 per ton shall be less than $2,000, the said lessee will pay to the lessor one hundred dollars ($100) per ton for all ore which shall be used or sold by the lessee or its assigns.

"For all other years thereafter during the term of this lease, said lessor shall be paid 5 per cent of the gross receipts from the baths or bath houses, and $100 per ton for the ore.

"The lessor grants to the lessee the right to mine, use and sell all available ore on said premises, and the

lessee agrees to mine, use and sell all available ore on said premises; and so long as ore can be obtained in available quantities on said deeded premises and/or the premises herein demised, or any part thereof, ore shall not be used from any other property;

      \*      \*      \*      \*      \*

"The lessee also agrees, as part of the consideration for said deeded and leased premises to build at his own expense a road suitable for ordinary and usual traffic both summer and winter from the Roosevelt highway to said deeded and leased premises, which road shall follow generally the course now used as a road across the premises of the lessor. The lessee shall grade and pack said road this summer, and shall as soon afterward as possible, and before fall, gravel the same and make it suitable for all winter traffic.

      \*      \*      \*      \*      \*

"The ore shall be paid for as follows: It shall be placed in a bin for weathering; shall be removed in 500-pound quantities, and before use, shall be weighed, and credited to the lessor's account, and paid for monthly.

      \*      \*      \*      \*      \*

"The primary object of this lease by lessee is for the purpose of maintaining a sanitarium, and if a hotel is built it shall be secondary to the sanitarium.

"The lessee shall pay the taxes on the leased property for the year 1925, and thereafter; and shall keep the same, and also the deeded land, free from any mechanics' or laborers' liens, or any liens which may be or may become a lien upon the fee simple title of the lessor.

"It is understood and agreed that this lease shall run for ten (10) years, provided the ore has been used or exhausted. Should the ore not all be used within said period, this lease shall be extended upon the same conditions as before until the ore has been exhausted, or it is impossible to mine or use the same.

"The lessor grants to the lessee and assigns the exclusive right to mine, use and sell the ore on or

under said premises mentioned in both said deed and in this lease, and it is such ore that shall be paid for, mined and sold, as hereinbefore stipulated.

"The payment of the moneys herein stipulated, the construction, completion and maintenance of said road, and the due performance by the lessees, its successors and assigns, is the actual and real consideration for both said lease and this deed.

\*　　\*　　\*　　\*　　\*

"The deed hereinbefore mentioned and this lease are executed at the same time and constitute practically one transaction."

A copy of the deed mentioned in the lease is also made a part of the record of the cause. The part thereof, material to the issues, being as follows:

"To have and to hold, the above described and granted premises, together with the tenements, hereditaments and appurtenances thereunto attached or belonging, unto the said Oregon Kelp-Ore Products Company, a corporation, its successors and assigns forever.

"The true consideration of this conveyance is the construction, completion and maintenance of a road from the Roosevelt highway to the property therein mentioned; and mining, using and disposing of the kelp ore under the premises herein conveyed and under the sixteen (16) acre tract leased from the grantor herein by the grantee herein in a lease of even date herewith and the payment by the grantee herein to the grantor herein the amounts called for in said lease as therein stipulated, which said lease is hereby referred to and made a part hereof as to such mining of ore and payments therefor, and are to be deemed a continued consideration for this deed until the termination of said lease, and/or the exhaustion of said ore on the premises herein granted and also on the said leased premises, all which covenants, payments, etc., shall be duly kept, performed and paid during the term of said lease or any extension thereof, and shall

be a charge upon the premises herein granted; all of which the said grantee covenants and agrees to pay, observe and perform, and all which covenants shall be construed as covenants running with the land hereby granted during the life of said lease or extension thereof, and so long as there shall be any ore upon said deeded and/or leased premises which can be profitably mined or used.''

The cause was tried by the court, who found against the plaintiff as to the lease being void because of want of mutuality, definiteness or certainty, and found that there were no substantial breaches of any of its covenants unless there was a failure to pay rent. The court opened up the case for the purpose of taking further testimony as to the amount of rent due and owing and thereafter entered an order dismissing the case without costs to either party.

From this judgment this appeal is taken. The bill of exceptions shows the following assignments of error:

''I. That the court erred in dismissing plaintiff's complaint and not holding that plaintiff was entitled to the relief prayed for in the complaint, for the reason that the covenants and conditions of the contracts under which defendants claim title to said real property have been breached and by reason thereof plaintiff had the right to terminate said contracts and take possession of said real property.

''II. That the court erred in dismissing plaintiff's complaint for the reason that the defendants have abandoned said property, thereby giving plaintiff the right to take possession of said property and terminate the contractual relation.

''III. That the court erred in dismissing plaintiff's complaint for the reason that the contracts under which defendants claim title to said property lack mutuality and are therefore void and unenforcible.

"IV. That the court erred in dismissing plaintiff's complaint without giving plaintiff a lien upon said property for all rents, royalties and taxes which would have accrued had defendants developed and operated said mine and resort in a reasonable manner."

The meaning and effect of these two instruments reduced to their simplest terms is that Anna E. Christiansen conveyed to the Oregon Kelp-Ore Products company by warranty deed six acres of the tract described in the amended complaint, reserving all the minerals. Then in a separate instrument, but as a part of the same transaction, she leased to the same party the adjoining 15.55 acre tract, again reserving all the minerals in the leased tract. By another provision of the lease, she gave, on certain conditions, the lessee the right to mine all the minerals on both the deeded and leased tracts for a minimum term of ten years and until all the ore was disposed of. These conditions appear to be: (1) that the lessee will build on either tract bath houses or baths or both for the purpose of using the kelp ore; (2) to pay $75 per ton for all such ore as may be used on the premises, and 5 per cent of the gross receipts from the operation of the baths during the second year of the term, and if the combined payments shall not amount to $2,000, then the ore shall be paid for at the rate of $100 per ton; during the remainder of the term the payments shall be 5 per cent of the gross receipts from the operation of the baths and $100 per ton for the ore; (3) the lessee shall also build a road suitable for winter and summer travel connecting the premises with the Roosevelt highway; (4) that the lessee shall pay all the taxes and keep the premises free from mechanics' liens and other liens of a like character; (5) that no ore from outside

sources shall be used or sold by the lessee until the ore on the deeded and leased tracts shall have been exhausted.

It will be observed that neither the deed nor the lease contains a forfeiture clause; that both are assignable.

Considering plaintiff's exceptions in their logical order, plaintiff contends that the terms of the deed and lease are indefinite and uncertain and that they lack mutuality to such an extent as to render them void.

From a careful reading of all the testimony in the case we agree with the learned trial judge that the evidence is not sufficient to connect the plaintiff with the acts alleged as fraudulent on the part of any of the other parties. He, however, purchased the rights of Anna E. Christiansen with full knowledge of the conditions existing between the other defendants, as well as the condition of the property and the progress of its development. He also knew that there was a considerable sum of money expended by defendants on said premises in carrying out their part of the lease. There was the $2,000 paid to his grantor; $5,000 or more in erecting buildings and installing equipment. The road had been built at considerable expense. That Mabel Smith held a mortgage for $15,000 against whatever rights and interest the defendant, Oregon Kelp-Ore Products Company, had in the premises.

The contract provides for mutual obligations to be observed and performed within a given time. The lessor let the lessee have the use of the premises. The lessee agreed to pay therefor in money and labor. Whatever may be said as to the term the lease shall run, it is at least definite for a term of ten years. But it is contended by plaintiff that there is no fixed time

when the lessee should construct the buildings or begin mining the ore. However, take the lease considered as a whole, it would appear that all of the provisions should be performed within a reasonable time. It shows that each of the contracting parties had in mind such a performance. This being somewhat of a new venture in business, the time was left somewhat indefinite, no doubt purposely, in order that the business could be placed upon a sound basis so that each of the parties would find it profitable. The instruments are not void for lack of mutuality, nor for indefiniteness.

■■ The next proposition is: If the lease is valid has there been such breaches of the covenants as will justify the court in declaring a forfeiture?

"It is hornbook law that the courts do not favor forfeiture and that evidence to establish a forfeiture should be clear and conclusive": *Sheridan v. Pacific State Fire Insurance Co.,* 107 Or. 285 (212 P. 783).

"Compensation and not forfeiture is a favorite maxim with the courts of equity": *Comstock v. Schiffman et al.,* 113 Or. 677 (234 P. 293).

■ It is also hornbook law that a breach of the ordinary covenants of a lease, in the absence of an express forfeiture clause, will not justify a forfeiture. This rule, however, has been modified by the statute of this state in regard to payment of rent:

"The failure of a tenant to pay the rent reserved by the terms of his lease for the period of ten days (unless a different period be stipulated in the lease) shall operate to terminate his tenancy * * *": § 5-209, Oregon Code 1930.

■ There is a further exception to this rule in this state; where the neglect and omission of the lessee to perform the covenants of a lease would result in waste or the destruction of its subject-matter, causing irreparable injury to the lessor. In such event, notwith-

standing the absence of an express forfeiture clause, equity would interfere for the purpose of canceling the lease to prevent waste or destruction of the subject-matter of the lease: *Higinbotham v. Wolford,* 101 Or. 53 (198 P. 923).

■■ The instant case does not fall within either of these exceptions but rests squarely on the general rule. There is no allegation nor is there any evidence indicating that as a result of the alleged breach of provisions or any of the covenants of the lease, the subject-matter thereof is injured and destroyed, or that plaintiff will suffer irreparable damage by reason thereof. Before a lease may be forfeited for nonpayment of a fixed rent reserved in the lease, the lease in itself must fix a definite and certain amount, as well as a definite time when the rental is due. Under the terms of the lease in the instant case, the rental to be paid is 5 per cent of the gross receipts of the operation of the baths and $75 per ton for the kelp ore mined upon the premises, and if during the second year, such 5 per cent of the gross receipts and $75 per ton for the ore extracted does not equal the sum of $2,000 per annum, the lessee will pay $100 per ton for the ore extracted and disposed of. Therefore there is no fixed liquidated sum reserved; neither is there a fixed time in which it shall be paid. It would require computation. This uncertainty takes it out of the statutory exemption to the general rule above cited. There is nothing in the testimony to establish the amount of rental that was or is due. This will be shown in the discussion further on.

■ The lessee seemed to have acted in good faith. It built the road required of it, not exactly in the manner called for in the lease, but a good serviceable winter and summer road. It constructed four or five cot-

tages at an expense of at least $1,500. It built a bath house and had a boiler and necessary plumbing installed. It mined about 100 tons of ore and placed it in the bins for ripening processes. It built at an expense of $5,000 or more a large building for a dance hall which was later partially converted into a sanitarium. All this it did within two years from the execution of the lease. It may therefore be said that there was a reasonably substantial compliance with its terms within a reasonable time. But plaintiff contends that it could have done much better and that he is not getting the financial returns from his investment that he expected. He should have protected himself in his lease. A part of the taxes have not been paid but this may be done later, and at any time within the legal period of redemption, without loss to plaintiff. Plaintiff further claims that the premises have not been kept free from liens for labor and material. It does not appear in the evidence that any effort has been made to foreclose any such liens if any have been legally filed.

The plaintiff's next proposition is: That there was an abandonment of the premises by all of the defendants and that defendants are insolvent and unable to continue to carry out the covenants of the lease. The evidence shows that defendant, Mabel Smith, is foreclosing her mortgage. If she prevails in her suit she will then become the successor in interest to the other defendants. There is no evidence that she is insolvent or unable to perform all of the covenants and obligations of the lease. If she does not prevail, it is admitted that the defendant, Kelp-Ore Products Company, will not be insolvent. The record does not disclose an abandonment. The plaintiff was in control as manager of operations under the defendant, the

Nestucca Bay Sanitarium and Health Resort Company. He resigned as such manager and immediately brought this suit. His action in this regard surely helped to hamper and retard operations. Neither the defendant, the Kelp-Ore Products Company, nor its mortgagee had any opportunity of rehabilitating the business before the suit was brought. In promoting and getting a new business venture under way, common observation is that one is bound to meet with difficulties, and in this case such difficulties as neither party could have foreseen. All that is required is a reasonable effort and reasonable opportunity to overcome such difficulties.

█ Plaintiff's next proposition is: That under any circumstances, he should have a lien on the property for the amount of rent found to be due. The evidence regarding the amount of rental due is unsatisfactory and purely speculative, and not such that the court could say there was a preponderance of evidence, or in fact any competent evidence as to any amount due or owing at the time the case was filed, or even at the time of the trial. The evidence on this subject seems to be based on what might have been made from a 42-room sanitarium. There is no provision in the lease that such a sanitarium should be built. But why stop at 42 rooms? Why not take 100 rooms, or any other number, and by changing the number and assuming the number of guests and further assuming the number of baths each guest would take, the amount could be raised or lowered to conform to the basis assumed. No witness who appeared upon this phase of the evidence seemed to have any substantial knowledge of the operations of such an institution. There is no definite sum upon which the court could establish a lien upon the premises.

The strife and troubles existing between the defendants were not put in issue in this cause except incidentally. These were in process of adjudication, between the parties directly interested, in the courts of Multnomah county or Tillamook county.

■ It must be remembered that this is not primarily a mining lease. The lease itself provides: ''The primary object of this lease by the lessee is for the purpose of maintaining a sanitarium.'' It therefore must rest on its own peculiar facts and circumstances as to what is a reasonable compliance with the terms of the contract under which the parties were operating. Here is a case that shows that plaintiff made an investment of $1,000 with a purchase price mortgage promising $9,000 more. He now asks a court of equity to forfeit and turn over to him investments of a much larger sum made by the defendants in the same subject-matter.

The learned trial court heard the testimony and had the benefit of the ''atmosphere of the trial'' and the theory upon which the case was presented, and we can see no reason for disturbing this decree. There seems to have been an honest difference of opinion between the parties as to their rights in the matter, so costs will be allowed to neither party, neither in this court nor in the court below.

BEAN, C. J., BROWN and BELT, JJ., concur.