EVERSON *v.* ALBERT.

1. LANDLORD AND TENANT—LAVATORY AND TOILET FACILITIES—STATUTES.

Where owner of building leased only portion of first floor for clothing store in which women were employed, it was his duty to maintain water supply so that there would be compliance with statutory requirements as to lavatory and toilet facilities being accessible to lessee's employees (2 Comp. Laws 1929, § 8332).

2. SAME—DUTY OF LANDLORD TO KEEP IN REPAIR.

Where landlord retains possession or control over portion of premises, he is bound to keep portion under his control in such condition of repair as will not interfere with peaceable possession and enjoyment by tenant of that portion which he has leased.

3. SAME—FREEZING WATER PIPES—CONSTRUCTIVE EVICTION.

Where freezing of pipes supplying water to lavatory and toilet in portion of building leased for clothing store and passing through portion of building over which tenant had no control was due to landlord's neglect to take proper precautions, tenant was justified in vacating premises and asserting that there was constructive eviction.

---

As to duty of landlord to repair portion of building remaining in his possession, see annotation in 14 L. R. A. 238; 3 L. R. A. (N. S.) 316; 4 L. R. A. (N. S.) 1142; 34 L. R. A. (N. S.) 807.

On loss of profits as element of damages for eviction, see annotation in 53 L. R. A. 102.

4. SAME—CONSTRUCTIVE EVICTION—DAMAGES.

In fixing damages for tenant's constructive eviction, trial court properly allowed amount paid for rent beyond time of vacating premises, and also for loss of profits sustained by tenant by reason of being compelled to vacate and establish his business in another location.

Appeal from Gogebic; Driscoll (George O.), J. Submitted October 11, 1932. (Docket No. 64, Calendar No. 36,646.) Decided January 3, 1933.

Assumpsit by Hans Everson against George Albert for rent of portion of a building for a store. Counterclaim by defendant for constructive eviction. Judgment on counterclaim for defendant. Plaintiff appeals. Affirmed.

*Harry K. Bay* and *Albert M. Marks* (*Mayhew Mott,* of counsel), for plaintiff.

*Jones & Patek* (*L. J. McManman,* of counsel), for defendant.

NORTH, J. Plaintiff's decedent was the owner of a two-story frame building in Ironwood, Michigan. He leased a portion of the first story to defendant for a clothing store. The term was for one year from June 2, 1930; annual rental $1,800, payable $150 monthly. Defendant paid the rent to February 2, 1931, but vacated the premises January 10, 1931. Plaintiff's suit is for the recovery of the balance of the year's rent. Defendant claims constructive eviction, and asserts a counterclaim for damages. The circuit judge, who heard the case without a jury, rendered judgment for defendant in the sum of $765.47. Plaintiff appeals.

The controlling question is whether the testimony justifies the determination of the circuit judge that

there was a constructive eviction. The following portion of the opinion filed by the circuit judge is sustained by the testimony, and discloses the basis of the judgment rendered:

"The pleadings made a *prima facie* case for plaintiff. Defendant introduced testimony to support his defense and claim of recoupment. Plaintiff rested his case on the evidence introduced by defendant and gave no excuse for failing to introduce testimony except claimed weakness and insufficiency of defendant's evidence.

"The undisputed evidence shows that there are other rooms on the ground floor of plaintiff's building than leased by defendant. One of them was occupied as a barber shop. Whether or not the upstairs rooms were occupied does not appear. There was a water closet and lavatory in one of the rooms leased to defendant. There was no underground shut-off to the water pipes supplying the same under these leased premises. There was such a shut-off under the barber shop. Defendant gave evidence tending to show the following facts: Before executing the lease he did not see the room wherein the lavatory and closet were because the plaintiff did not have the key to that room and the passageway between the two rooms was blocked. Upon inquiry he was assured by plaintiff that there was water and were toilets in that room. When he moved in he found the floor rotted near the toilet. He cut out the rotten flooring and put a sort of trap door in the floor. Soon after moving in there he noticed foul odors emanating from beneath the floor. These odors continued during his entire occupancy, being more pronounced at certain times than at others. He had two lady clerks and one male clerk. His customers and his clerks complained of these odors. He complained of these odors to plaintiff and asked him to remove their cause. Plaintiff failed to do so. In November, 1930, and repeatedly

thereafter until the time of defendant's removal, though defendant kept the leased rooms warm, the water pipes supplying the water closet and lavatory froze so that plaintiff's store was without water supply and the clerks were obliged to go elsewhere for lavatory and toilet facilities. Notwithstanding prompt complaints by defendant, plaintiff failed to promptly thaw out the pipes. The freezing was due to lack of protection for the pipes in the open space beneath the floor which could have been easily and inexpensively supplied. For many years prior to the time of this leasing, these pipes had been freezing and had been thawed out by plaintiff's plumber at plaintiff's request. Defendant moved out because of these foul odors and because he had no running water. In the absence of contradictory testimony, I cannot do otherwise than accept such facts as true.''

In determining the rights of the respective parties we must be mindful of the following statutory provision:

''Every manufacturing establishment, workshop, hotel, or store in which five or more persons are employed, and every institution in which two or more children, young persons, or women are employed, shall be supplied with proper wash and dressing rooms, and kept in a cleanly state and free from effluvia arising from any drain, privy, or other nuisance, and shall be provided, within reasonable access, with a sufficient number of proper water closets, earth closets or privies for the reasonable use of persons employed therein.'' 2 Comp. Laws 1929, § 8332.

''When a landlord rents a building, and in the lease limits its use to a certain specified purpose, and the tenant agrees to do no more than keep the premises in as good repair as when taken, he thereby recommends the building to be suitable for the

purposes of the lessee in its then condition, in the absence of contrary modifying clauses in the lease." *Young* v. *Collett* (syllabus), 63 Mich. 331.

In the instant case the lease provided that the tenant should "keep the said premises and every part thereof in as good repair, * * * as when taken, reasonable use and wear thereof and damage by the elements excepted." As noted above, the lease covered only a portion of the first floor of plaintiff's building in which there were other tenants. Under the facts disclosed in this case it was clearly the duty of the landlord (plaintiff) to maintain a water supply so that there would be compliance with the statutory requirements as to lavatory and toilet facilities being accessible to defendant's employees. The control of the water supply was in the hands of the landlord. The defendant could not tamper with the water pipes outside his own rented portion of the building where the freezing occurred (possibly with one exception) without the possibility of interfering with other tenants and even assuming the risk of damaging their property. In short, the situation was such that defendant could not repair the frozen water mains or alter the condition which caused the pipes to freeze, without himself being a trespasser in portions of the property not covered by his lease; nor could he do so without tampering with the water supply of other tenants. It seems to be the rule in cases where the landlord retains possession or control over a portion of the premises that he is bound to keep the portion of the premises under his control in such condition of repair as will not interfere with the peaceable possession and enjoyment by the tenant of that portion which he has leased. In *Fitch* v.

*Armour,* 39 N. Y. St. Rep. 246 (14 N. Y. Supp. 319, 59 N. Y. Super. Ct. 413), it was held that a landlord was bound to keep in condition pipes which were used in common by occupants of different flats, where such pipes were not solely within the control and exclusive use of any particular tenant. This court has held:

"That when the landlord leases separate portions of the same building to different tenants, and reserves control of those parts of the building or premises used in common by all the tenants, he is under an implied obligation to use reasonable diligence to keep in a safe condition the parts over which he reserves control." *Cooper* v. *Lawson,* 139 Mich. 628 (18 Am. Neg. Rep. 138).

See, also, 16 R. C. L. p. 1036.

We think the facts in this case when tested by the rule of law sustained by the above authorities justified the defendant in vacating the leased premises and in asserting there was constructive eviction. The trial judge in fixing the damages allowed $100 paid by defendant as rent beyond the date when the premises were vacated; and the balance of the judgment ($665.47) was for loss of profits sustained by defendant by reason of his being compelled to vacate the leased property and to establish his business in another location. Each of these elements of damage is well within the range of proofs submitted, and we find no occasion for modification.

Judgment is affirmed, with costs to appellee.

McDonald, C. J., and Clark, Potter, Sharpe, Fead, Wiest, and Butzel, JJ., concurred.