[No. 34100.   Department Two.   December 12, 1957.]

JOHN CHOPOT et al., *Respondents*, v. FRANK FOSTER et al.,
*Appellants*, ROMER J. ZEMA et al., *Respondents*.[1]

[1]Reported in 318 P. (2d) 976.

*Geo. W. Young*, for appellants.

*Daniel L. Collins*, for respondents.

FOSTER, J.—Appellants, who were defendants below, appeal from a permanent injunction prohibiting them from interfering with the access to respondents' mill and its operation.

Until the wife's death on January 10, 1955, the marital community of Romer Zema and Lydia Zema owned a tract of several hundred acres of timbered land in Stevens county. The wife died intestate on January 10, 1955, leaving her husband and two sons surviving. Romer Zema was appointed administrator of his deceased wife's estate on January 28, 1955.

The surviving husband, on March 15, 1955, leased to respondent John Chopot, for a five-year term, a four-acre millsite within the larger parcel. That lease, omitting the formal portions and acknowledgment, is set out in the margin.[2]

The court found that respondent John Chopot took

[2]"This agreement of lease made and entered into this 15th day of March, 1955, by and between Romer Zema, as lessor, and John Chopot, as lessee, Witnesseth:

"For value received, and in consideration of the mutual covenants herein contained, the lessor hereby leases and lets to the lessee, for the term of five (5) years commencing on the date hereof, and subject to the conditions herein, a certain mill site, being about four (4) acres in area, situated in the NW¼ of the NE¼ of Section 25, Township 38 North, of Range 39, E. W. M., and situated between two small branch creeks of Onion Creek running through said property, it being the intention to lease to the lessee herein the old mill site formerly used and occupied by the lessor herein.

"It is agreed and understood that the lessee shall be entitled to use and occupy said mill site, without rent therefor, and that the lessee will not commit any unnecessary waste thereon. It is agreed and understood that the lessee shall have the right to remove any machinery which may be placed upon the property during the term of this lease, but that the lessee will leave any permanent buildings or structures on the property.

"It is also agreed that this lease shall not be assigned to any other person, without the written consent of the lessor."

possession of the millsite March 15, 1955, erected a mill thereon, and has since been in open, notorious, and continuous possession.

Respondent John Chopot operated the mill until June 1, 1955, when the court found, in an unchallenged finding, that he authorized his son, respondent Joe Chopot, and his son-in-law, LeRoy Blackburn, to operate the mill and pay him therefor two dollars per thousand for the lumber cut, and that they have continuously operated the mill since.

In another unchallenged finding, it is established that on June 30, 1955, before appellants' purchase, all of the property of the deceased wife was set aside to respondent Romer Zema in lieu of homestead.

Appellant Dorothy Clark, who is the mother of appellant Frank Foster, desired to purchase the entire tract for her son. By unchallenged findings, the fact is that the appellants had actual knowledge of the lease from Zema to Chopot, and that the appellants knew the mill was in operation before any purchase negotiations were opened.

In finding No. 13 (a), set out in the margin,[3] the court found that, by inadvertence, the millsite leased to respondent John Chopot was not mentioned in the deed from Zema to the appellant Dorothy Clark, but that, at the time of purchase, respondent Zema made a full disclosure of the true situation to the appellants, and advised appellants that the purchase was subject to the Chopot lease. That finding, which is unchallenged, must be accepted as a verity.

With full knowledge of the Chopot lease and the construction and operation of the mill, appellant Dorothy Clark

---

[3]"That by inadvertence the acreage covered by the lease held by the plaintiffs was neither excepted nor mentioned in the agreement of purchase nor in the deed of conveyance from Romer J. Zema, Grantor to Dorothy Clark, Grantee. That the fault for the failure to mention or except the said lease lay equally with the defendants, Dorothy Clark, Frank Foster and Dolores Foster, his wife, and Romer J. Zema, who is an elderly man with very little business experience; that Romer J. Zema at all times acted in entire good faith and made a full disclosure of the true situation to the defendants, Dorothy Clark, Frank Foster and Dolores Foster, his wife, and that the agreement of the parties was that the said purchase and conveyance of the said property be subject to the lease held by the plaintiffs."

purchased the entire tract from Zema for her son, appellant Foster, who went into possession in the forepart of August, 1955.

In September of 1955, appellants denied respondents access to their mill and locked the gate on the road leading thereto, whereupon respondents John Chopot and Joe Chopot sued to enjoin the appellants from interfering with their operation of the mill. From the final judgment permanently enjoining such interference, the appellants, Frank Foster and wife and his mother, Dorothy Clark, and her husband, appeal.

Appellants' brief states the question of this appeal in the following sentence:

"The *sole question* to be determined on this short record is whether the lease in question is a valid and enforceable lease, and whether respondents Joe Chopot and Leroy Blackburn, the copartnership, had any enforceable rights thereunder against appellant, Dorothy Clark." (Italics ours.)

■ Appellants urge upon us the argument that, because respondent Zema was administrator of the estate of his deceased wife, he had no authority to execute the lease, and cite statutes and decisions of other states respecting the power of a personal representative to lease real property of a deceased, but make no mention of the controlling statutes (RCW 11.04.250-290) of this state, which provide that title to real property vests in the heirs immediately upon the owner's death. The experienced and distinguished trial judge, in a painstaking and comprehensive memorandum opinion covering eighteen typewritten pages in the statement of facts, sagaciously commented:

"There can be no doubt that the property and all of it, both real and personal, would be set aside to the surviving spouse in view of its value as estimated and as confirmed by appraisement in the total sum of $4750.00."

This asserted infirmity in the lease at the time of its execution was completely cured by the order setting aside the real property in question to respondent Zema in lieu

of homestead. The validity of that order is not even questioned.

Appellants argue that the lease was assigned by the lessee, John Chopot, to respondents Joe Chopot and LeRoy Blackburn. The language of the lease is that the lease "shall not be assigned to any other person, without the written consent of the lessor." But it does not provide for forfeiture in the event of breach of that provision. It is difficult to understand how the appellants can claim the lease to be void and simultaneously assert its breach by respondents, but it is sufficient to say that there is no proof at all of any assignment. The most that can be said is that John Chopot, the lessee, authorized his son, Joe Chopot, and his son-in-law, LeRoy Blackburn, to operate the mill on a percentage basis for an indeterminate period, but this is not an assignment of the lease.

Moreover, an assignment would not work a forfeiture without a forfeiture provision in the lease itself, and this lease contains none.

"In general a tenancy cannot be terminated for breach of covenant by the lessee unless there is an express provision in the lease for forfeiture or right of reentry in such case." 51 C. J. S. 680, 683, § 104 (b).

If the operation of the mill by respondents Joe Chopot and LeRoy Blackburn was a breach of the lease, it was waived by the lessor, Zema, by working in the mill after its operation was taken over by respondents Joe Chopot and LeRoy Blackburn, which fact was known to the appellants at the time of purchase. After purchase of the property, appellants, likewise, sold respondents logs to be cut in the mill, and accepted pay therefor.

Appellants argue that the lease lacked mutuality of obligation, and that there was, therefore, no consideration. The court found that, relying upon the lease, the lessee constructed the mill building and installed machinery at a cost to him of six thousand dollars. Assuming that the appellants' argument is valid that, when the lease was entirely executory, there was no mutuality of obligation, this was overcome by the construction of the buildings.

The lease provides that the lessee will leave any permanent buildings or structures on the property. In the memorandum opinion the trial court said:

"That provision is in itself sufficient consideration as required by law and evidence disclosed at the trial of the case that a new sawmill building had been erected by plaintiffs, machinery installed which plaintiffs had a right to remove and plaintiff expended, as shown by the evidence of John Chopot, the mill building and machinery, built and installed, $6000.00."

He could not, therefore, remove the building, although he could remove the machinery. Assuming that the lease lacked mutuality at the time of its execution, it became binding upon construction of the mill.

In *Levas v. Dewey*, 33 Wn. (2d) 232, 248, 205 P. (2d) 356, 213 P. (2d) 933, the applicable rule of law was stated as follows:

"It is well settled that a promise lacking mutuality at its inception becomes binding on the promisor after performance by the promisee. 17 C. J. S. 448, Contracts, § 100 c.; 12 Am. Jur. 609, Contracts, § 114."

But appellants' argument completely overlooks the statement of consideration "for value received," in the lease itself, which alone is sufficient. The applicable rule is stated in 20 Am. Jur. 234, § 238, note 14:

"In simple contracts in writing other than negotiable instruments, the words 'value received' ordinarily create a presumption or establish a prima facie case of a sufficient consideration to support the instrument."

There is no lack of consideration.

The judgment is affirmed.

HILL, C. J., DONWORTH, and ROSELLINI, JJ., concur.

January 30, 1958. Petition for rehearing denied.