Argued September 5, affirmed November 20, 1963, reargued
March 31, reversed and remanded, formed opinion withdrawn
April 15, 1964

# WESTERN REBUILDERS & TRACTOR PARTS, INC. *v.* FELMLEY

386 P. 2d 813
391 P. 2d 383

192

*Loyal H. McCarthy,* Portland, argued the cause for appellant. With him on the brief were McCarthy & McCarthy, Portland.

*Ernest M. Jachetta,* Portland, argued the cause for respondent. With him on the brief was Leo Levenson, Portland.

Before MCALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN and LUSK, Justices.

PERRY, J.

This is an action for unlawful eviction from a leasehold brought by a former tenant against his landlord. Trial was had without a jury before the Circuit Court of Multnomah County. From a judgment awarding plaintiff $15,000 in damages, defendant appeals.

Plaintiff is a corporation engaged in the repair and sale of tractor parts. The parties entered into the lease here involved for a one-year period terminating March 31, 1958. By the terms of this lease plaintiff agreed to pay a rental of $225 per month plus "3% on all gross collections over $2,000.00 and not exceeding $10,000.00, and 1% on the next $5,000.00 and one-half of 1% on all over $15,000.00 of gross collections during the preceding calendar month." The $225 monthly rental together with the percentages on gross collections were to be paid "on or before the 1st day of each calendar month." An initial deposit of $675 was to be "applied in meeting the minimum monthly payments of $225 per month during the last three

months of the leasehold period," but was to be forfeited in case the lease was terminated before March 31, 1958.

It appears that plaintiff always promptly paid the $225 monthly rental but was consistently late in paying the percentages on gross collections. Defendant acquiesced without complaint to this practice of belated percentage payments until January 20, 1958 when he sent a notice of termination of the lease to plaintiff for "failure to account for the percentages on gross collections for the months of November and December."

Defendant refused plaintiff's tender of payment for the November and December percentages two days later on the ground that it might be construed as a waiver of his right to terminate, but subsequently did accept payment. Defendant also accepted plaintiff's check dated February 5, 1958 covering the percentage rental for the period from January 1 to January 20, 1958.

■ There can be no doubt but that defendant had the right to terminate the lease on January 20, 1958. His acquiescence in late payment for earlier months could not amount to a waiver of his right to strictly enforce the terms of the lease in later months. *Rainey v. Quigley*, 180 Or 554, 178 P2d 148; *Title & Trust Co. v. Durkheimer Investment Co.*, 155 Or 427, 63 P2d 909, 64 P2d 834. The plaintiff, however, does not attack defendant's initial right to terminate the lease, but rather whether this right subsisted after defendant accepted payment of the overdue rent for which he declared the forfeiture. It is argued that such an acceptance of payment is a waiver of defendant's right to terminate the lease and therefore makes the

termination a wrongful eviction. The question presented therefore is whether a landlord's acceptance of accrued rent subsequent to notice of termination constitutes a reinstatement of the lease.

At common law a sharp distinction was drawn between a landlord's acceptance of rent accruing before and after the date of notice to quit. Accrued rent could be accepted without waiving the forfeiture since it did not involve any recognition of the continuance of the tenancy, but acceptance of later accruing rent was deemed a reinstatement of the lease. See, 2 Tiffany, Landlord and Tenant, § 194 i (1) (b); 120 ALR 557; 109 ALR 1267; 51 CJS, Landlord and Tenant, § 117(2). This distinction has been abolished in Oregon by statute. ORS 91.090 provides as follows:

> "The failure of a tenant to pay the rent reserved by the terms of his lease for the period of 10 days, unless a different period is stipulated in the lease, after it becomes due and payable, operates to terminate his tenancy. No notice to quit or pay the rent is required to render the holding of such tenant thereafter wrongful; however, if the landlord, after such default of rent, accepts payment thereof, the lease is reinstated for the full period fixed by its terms, subject to termination by subsequent defaults in payment of rent."

This statute accomplishes several things. On the one hand it makes it unnecessary for the landlord to declare a forfeiture for nonpayment of rent; on the other, it prevents a forfeiture where the landlord accepts the delinquent tenant's tender of the overdue rent. Thus, though the landlord need not now show a notice to quit or pay in order to terminate the lease, he must show that he has not subsequently accepted

the rent for which he declared the forfeiture. *Baker v. Lehrer,* 210 Or 635, 312 P2d 1072; *Neitsch v. Tyrrell,* 25 Wash2d 303, 171 P2d 241. This seems to be a codification of the equitable rule that since a forfeiture in a lease for failure to pay rent is designed to secure payment, the court will relieve against a forfeiture for such cause upon payment of the sum secured. *Rainey v. Quigley,* supra, at 180 Or 565.

■ Defendant's cause is not aided from the fact that he carefully attempted to avoid reinstating the lease in accepting the past-due rent. Defendant's words cannot change the fact that by his actions he accepted the rent and reinstated the lease. As in *Miller v. Reidy,* 85 Cal App 757, 260 P 358, this is but a bald attempt to eat his cake and have it too. By accepting payment for the overdue rent defendant fell within the ambit of ORS 91.090 whether or not he so desired. Having reinstated the lease for its full term, it follows that defendant's eviction of plaintiff was wrongful.

■ Defendant's last two assignments of error relate to certain exclusionary action taken by the trial judge during the course of the trial. It is first contended that in determining the proper amount of damages the court committed error in not admitting evidence of a certain settlement and release executed by plaintiff corporation and one Williams, a former president. This release is said to have arisen out of an alleged conspiracy between defendant and Williams to evict plaintiff. Though it is highly questionable whether evidence of such a release is relevant to the case at bar, we need not decide that issue since defendant never specially pleaded the release as an affirmative defense. Having failed to plead the new

196

matter, it was well within the discretion of the trial judge to exclude this evidence when offered. ORS 16.290; *Beter v. Chevalier,* 121 Mont 337, 193 P2d 374; *Baker v. Farrel,* 78 Cal App2d 578, 177 P2d 973; *Pearson v. Butts,* 224 Iowa 376, 276 NW 65; *Curran v. Matson,* 32 NYS2d 12, 177 Misc 861; *Arnold v. Brotherhood of Locomotive Firemen and Enginemen,* 231 Mo App 508, 101 SW2d 729; 45 Am Jur, Release, § 40.

■ It is further argued that the trial court committed reversible error in limiting defendant's pleading and proof of overdue rent to the months of November and December, 1957. Though no evidence of nonpayment for prior rental periods was ever offered, defendant claims the trial could not limit inquiry into past delinquencies to those months. There is no merit to this contention. A trial judge should limit the scope of inquiry to the material issues.

Since the forfeiture and eviction was based solely on a failure to account for the months of November and December, evidence of other defaults was not within the issues presented.

There is no merit in defendant's contention that the evidence as to damages would not support the judgment entered.

The judgment is affirmed.

**ON REHEARING**

*Loyal H. McCarthy,* Portland, argued the cause for appellant. With him on the briefs was William C. McCarthy, Portland.

*Leo Levenson,* Portland, argued the cause for respondent. With him on the brief was Ernest M. Jachetta, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, DENECKE and LUSK, Justices.

PERRY, J.

Believing we were in error in the application of ORS 91.090 to the facts of this case and the interpretation placed thereon by our prior opinion, we granted a rehearing.

Having determined now that we were in error, the former opinion is withdrawn and the following is the opinion of the court.

This is an action in tort by a tenant for damages for wrongful eviction.

The plaintiff, a corporation, entered into a lease with the defendant in December, 1956. The lease was for a period of one year, commencing the first day of April, 1957, and terminating on March 31, 1958, and provided that the lessee should pay a monthly rental of $225 per month, "together with the percentages on gross collections hereinafter provided on or before the 1st day of each and every calendar month beginning with the month of April, 1957, and ending with the month of March, 1958." The percentage rental was 3% on gross collections up to $10,000, plus 1% on the next $5,000, plus one half of 1% on all

amounts over $15,000 during the preceding calendar month.

The lease also provided for the lessee to keep proper accounts to be made available to the "\* \* \* lessor for auditing during the fore part of each calendar month prior to the 30th day of the month upon which payments are to be made."

There is no provision in the lease for a forfeiture by reason of the breach of any of the covenants therein, including payment of rent.

The evidence discloses that the plaintiff was not in default as to the payment of the fixed rental of $225 during its occupancy of the premises. The fixed rental of $225 was mailed to the lessor and the lessor called personally for the percentage rental.

On January 20, 1958, the defendant lessor notified the plaintiff by mail that its lease had been terminated by reason of its *"failure to account for the percentages on gross collections for the months of November and December * * *."* (Italics ours.) The plaintiff thereupon tendered the percentage rentals for the months of November and December, which tender was refused by the defendant. On January 22, 1958, the defendant leased the premises to a Mr. Williams who took immediate possession of the leased premises and the plaintiff was thus ousted of possession.

■■ It is a well-established rule of law that forfeitures are not favored and, in the absence of an agreement for forfeiture or a statute providing therefor, a lessor may not terminate the lease for breach of a covenant. *Clanton v. Oregon Kelp-Ore Co.,* 135 Or 321, 296 P 30; *Chesnut v. Master Laboratories,* 148 Neb 378, 27 NW2d 541; *Reynolds v. Earley,* 241 NC 521, 85 SE2d 904; *Barnett v. Dooley,* 186 Tenn 611, 212 SW2d 598; *Chopot v. Foster,* 51 Wash2d 406, 318 P2d 976.

This rule is applicable and applies with equal force to covenants to pay rent. *Estes v. Gatliff*, 291 Ky 93, 163 SW2d 273; *Hersey Gravel Co. v. Crescent Gravel Co.*, 261 Mich 488, 246 NW 194; *Eurengy v. Equitable Realty Corp.*, 341 Mo 341, 107 SW2d 68.

The defendant, as authority for his right to terminate plaintiff's lease, can rely only on ORS 91.090, which is as follows:

> "The failure of a tenant to pay the rent reserved by the terms of his lease for the period of 10 days, unless a different period is stipulated in the lease, after it becomes due and payable, operates to terminate his tenancy. No notice to quit or pay the rent is required to render the holding of such tenant thereafter wrongful; however, if the landlord, after such default in payment of rent, accepts payment thereof, the lease is reinstated for the full period fixed by its terms, subject to termination by subsequent defaults in payment of rent."

In defendant's argument he contended that his was a percentage rental agreement with a minimum payment to be made of $225 per month, and, as stated in defendant's letter, his contention of default in the payment of rent rests solely on the percentage rental claimed due.

In *Clanton v. Oregon Kelp-Ore Co.*, supra, a lease was executed for the primary purpose of maintaining a sanitarium. The lease provided that the rent to be paid was 5% of the gross receipts from the operation of the baths and $75 per ton for kelp ore mined on the premises. In construing section 5-209, Oregon Code 1930, the language of which was identical with ORS 91.090, we held (135 Or 321, 332) that since "* * * there is no fixed liquidated sum reserved * * *, [i]t would require computation." And this fact takes it out of the ambit of the statute.

There is no evidence in the present case, other than the subsequent fact of tender by the plaintiff and acceptance by the defendant of the check for the percentage rent of November and December, that the rent for those months had been computed, audited and agreed upon, and, therefore, was a liquidated sum at the time the plaintiff was ousted from possession.

Since the statute did not apply to the unliquidated percentage rental, and there was no provision in the lease for termination, the trial court correctly found there was no lawful basis for the plaintiff's eviction by the defendant.

On the rehearing granted, the defendant again contends that there was insufficient evidence offered to sustain the trial court's judgment of $15,000 as general damages.

A re-examination of this contention leads us to agree with the defendant's contention. We misinterpreted the profit and loss audit introduced by the plaintiff as being on a monthly basis whereas the profits and losses were actually determined quarterly.

The trial court based his determination of damages on his finding set out as follows:

> "That plaintiff sustained (1) loss of supplies and equipment, (2) expenses incurred for taking inventory and moving property elsewhere, (3) loss of credit standing with customers, suppliers and creditors, (4) loss of goodwill and business standing amongst customers, competitors, creditors and suppliers, (5) loss in opportunity for steady growth.
> "That based on the foregoing, plaintiff is entitled to judgment in the amount of $15,000; that plaintiff's claim for punitive damages were not proved."

■ In determining damages for a landlord's wrongful eviction that deprives the tenant of the use of the property, the standard measure is the difference between the reasonable rental value of the premises and the rent reserved. *Warren et ux v. Parsons et ux,* 224 Or 605, 356 P2d 953; *Buck v. Mueller,* 221 Or 271, 351 P2d 61.

In addition thereto, the tenant may be compensated for such actual damages as are both natural and probable as a direct consequence of the eviction. *Buck v. Mueller,* supra.

Also, a tenant is entitled to recover the reasonable anticipated profits from his business, if any, from the date of eviction to the date when the lease by its own terms expires. *Everson v. Albert,* 261 Mich 182, 246 NW 88; *Kenney v. Braun,* 113 Neb 12, 201 NW 641; *Walgreen Co. v. Walton,* 16 Tenn App 213, 64 SW2d 44.

As to the finding (1), "loss of supplies and equipment," there is no evidence that the defendant converted the property claimed to have been lost, or is there any evidence that the defendant in anywise interfered with the plaintiff's removal of this property from the premises.

As to the finding (2), "expenses incurred for taking inventory and moving elsewhere," there is evidence that the expense of moving precipitately instead of at the end of the lease, some two months and a few days later, was in the neighborhood of $1,200.

We must assume that the trial court's findings (3), (4) and (5) refer to and cover the loss of profits for the period from the date of eviction to the termination of the lease, as provided therein, March 31, 1958.

Since the lease expired by its own terms March 31, 1958, and plaintiff had already determined not to renew the lease, it could hardly be contended that these losses, as stated, were either within the contemplation of the parties at the time of the execution of the lease or were a natural and probable result arising from the eviction.

■ Also, it is well established that the loss of future profits must not be uncertain and speculative. *Buck v. Mueller,* supra; *Stubblefield v. Montgomery Ward & Co.,* 163 Or 432, 96 P2d 774, 98 P2d 14, 125 ALR 1228.

■ "Past profits may be shown if they reflect the operation of an established business." *Buck v. Mueller,* supra, 221 Or 271, 283.

■ In the matter before us, the only evidence from which future profits can with reasonable certainty be ascertained is the record of past operations found in the consolidated balance sheet offered by the plaintiff. An examination of this on a monthly basis of profits made discloses they will not and could not support the judgment entered even with the inclusion of nominal damages and the cost of moving.

The judgment is, therefore, reversed and remanded for the determination of damages.