Argued January 5, affirmed February 17, petition for rehearing
denied March 15, 1977

RATOZA et al, *Respondents,*

*v.*

THE FLAME, INC. et al, *Appellants.*

(No. 416-181, SC 24416)

559 P2d 1283

Elden M. Rosenthal, Portland, argued the cause and filed briefs for appellants.

Robert K. Winger, of Morrison, Dunn, Cohen, Miller & Carney, Portland, argued the cause and filed a brief for respondents.

Before Denecke, Chief Justice, and Holman, Howell, Lent, Linde, Mengler and Bradshaw, Justices.

HOWELL, J.

**HOWELL, J.**

Defendants appeal from a judgment for plaintiffs in an f.e.d. action tried before the court.

Plaintiffs, as lessors, entered into a lease agreement with defendants in January, 1971. The agreement provided for a fixed monthly rental plus 5 per cent of the gross sales from the preceding month. Both payments were to be made on the first day of each month or within a grace period of 10 days. Prior to the instant f.e.d. action, the parties were having disagreements concerning the lease and had been involved in a declaratory judgment action. As a result, defendants admitted that they knew plaintiffs were going to insist on strict performance of the lease. When the May 1, 1975, payment was not received by May 13, plaintiffs filed this f.e.d. proceeding. Defendants filed an answer alleging as an affirmative defense that plaintiffs had previously accepted some late payments, had thereby waived the time payment provision of the lease, and were therefore estopped to insist upon strict performance. Defendants also alleged that they had tendered all subsequent rentals and that plaintiffs had refused acceptance.

We agree with the trial court's conclusion that this case is controlled by ORS 91.090 and by our previous decision in *Rainey v. Quigley,* 180 Or 554, 178 P2d 148, 170 ALR 1149 (1947). The statute provides:

> "The failure of a tenant to pay the rent reserved by the terms of his lease for the period of 10 days, unless a different period is stipulated in the lease, after it becomes due and payable, operates to terminate his tenancy. No notice to quit or pay the rent is required to render the holding of such tenant thereafter wrongful; however, if the landlord, after such default in payment of rent, accepts payment thereof, the lease is reinstated for the full period fixed by its terms, subject to termination by subsequent defaults in payment of rent."

In *Rainey v. Quigley, supra,* this court, in an extensive opinion by Justice Lusk, considered a situa-

tion similar to the instant case. The tenant had consistently made, and the landlord had accepted, late payments over a period of many months. The defense, as in the instant case, was waiver by acceptance of the late payments. We stated:

> "* * * So that, if this case involved nothing more than the contract of the parties, there would be no doubt of the jurisdiction and power of the court to grant the relief which the plaintiff seeks. But, unless we are to ignore or rewrite the statute, that power cannot be exercised here, for, under the statute, the failure of the tenant to pay the rent reserved within the time prescribed 'shall operate to terminate his tenancy, and no notice to quit or pay said rent shall be required to render the holding of such tenant thereafter wrongful.' Nor can the acceptance of delinquent payments in previous months alter the case, because 'such acceptance of payment shall operate to reinstate such lease for the full period fixed by its terms, subject to be defeated or terminated by subsequent defaults in payment of rent.' How, then, can it be said that the plaintiff was 'lulled into a sense of security', when the law warned him that he would not be secure in the event of a subsequent default?

> "* * * * *

> "* * * There was no mistake on the part of the plaintiff, fraud on the part of the defendant, or any act of hers which would create an estoppel. The effect of the acceptance of past due rent was merely to reinstate the lease, not to impair the lessor's statutory rights." 180 Or at 565-66.

*See also State Hwy. Comm. v. Demarest,* 263 Or 590, 503 P2d 682 (1972).

■■ Under the rule of *Rainey v. Quigley, supra,* the statute operated to automatically terminate defendants' leasehold when the 10-day grace period elapsed, and there was no waiver of the time provision as a result of any previous acceptances of late payments.[1]

---

[1] The defendants' reliance upon vendor-purchaser cases such as *Fisher v. Tiffin,* 275 Or 437, 551 P2d 1061 (1976), and *Hall v. Work,* 223 Or 347, 354 P2d 837 (1960), is misplaced because the provisions of ORS 91.090 are controlling in a landlord-tenant situation.

Moreover, the defendants have admitted that as a result of their previous strained relationship they knew that plaintiffs would insist on strict performance in the future. Under such circumstances, there would, in any event, be no basis for an estoppel in this case.

The defendants rely on *Western Rebuilders, Inc. v. Felmley,* 237 Or 191, 386 P2d 813, 391 P2d 383 (1964), an action for unlawful eviction by a tenant against the landlord. The lease required a monthly rental plus a percentage of the tenant's gross collections. The tenant was consistently late in paying the percentage rent but paid the fixed rental on the due date. The lease required the lessee to keep accounts of the collections to be made available for auditing by the landlord. There was no provision in the lease for a forfeiture for breach of covenant including payment of the rent.

On rehearing, we held that ORS 91.090 did not apply because the percentage rent for the two delinquent months had not been computed and agreed upon, and that the statute "did not apply to the unliquidated percentage rental and there was no provision in the lease for termination" and that therefore the landlord's eviction of the tenant was unlawful. 237 Or at 201.

We believe *Western Rebuilders* is distinguishable from the instant case because, in the former, the tenant had paid the fixed rental on the due date and only the percentage rental was delinquent. In the instant case, the tenant was delinquent in making both the fixed and the percentage rentals.

Moreover, in declaring that the statute did not apply when the rent was an unliquidated percentage rental, the court in *Western Rebuilders* relied on a previous decision, *Clanton v. Oregon Kelp-Ore Co.,* 135 Or 321, 296 P 30 (1931). In that case the rent to be paid was 5 per cent of the gross receipts, plus $75 per ton for all kelp ore mined on the leased premises. The court held the statute did not apply for two reasons: the rental amount was an unliquidated sum, and there

was no fixed time for the payment of the rent. Obviously, if the lease did not fix the time when the rent was to be paid, the statute could not apply because the statute provides that "the failure of a tenant to pay the rent reserved by the terms of his lease *for the period of 10 days * * * after it becomes due and payable*" operates to terminate the tenancy. It was not necessary to add the additional reason that the statute did not apply because the rent "would require computation" and was therefore unliquidated. Therefore, the language from the *Clanton* case which was relied on in *Western Rebuilders* was merely dicta.

We can see no reason, particularly under the facts in the instant case, why ORS 91.090 should not apply to a lease which contains both a fixed rental and a percentage of gross sales rental. We know that such leases are becoming increasingly common in the rental of business premises. Additionally, the evidence in this case shows that in the past defendants had consistently made both rental payments between the first and the twelfth of each month and, therefore, apparently experienced no undue difficulty in computing the percentage rental within the 10-day grace period.

In summary, we conclude that when the defendants did not pay the May 1, 1975, rental within the 10-day grace period, their leasehold was automatically terminated under ORS 91.090, and plaintiffs were entitled to recover possession of the premises.

Affirmed.