Argued and submitted September 24, 1982, affirmed February 2, 1983

BARBY et al,
*Respondents,*
*v.*
UNGER,
*Appellant.*

(37769, 37770; CA A22626)

658 P2d 512

Marsha M. Cordon, Hillsboro, argued the cause for appellant. With her on the briefs were Wayne C. Rapp, and Wayne C. Rapp & Associates, Hillsboro.

Mildred J. Carmack, Portland, argued the cause for respondents. With her on the brief were Henry C. Willener, and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Van Hoomissen, Judge.

RICHARDSON, P. J.

**RICHARDSON, P. J.**

Defendant appeals from a judgment entered against him for breach of two farm leases. We affirm.

In April, 1972, defendant entered into a written farm lease covering 320 acres with Schulmerich Investments, Inc. (Schulmerich), owner of the land, for a term from October, 1972, through September, 1978. The lease provided Schulmerich the option of selling the land during the lease period; if it chose to exercise that option, the lease would terminate. The lessee, however, would retain "the right to harvest and remove any growing crops thereon after such notice of termination *for that year*" and, additionally, would be compensated "for any crops, cost of labor and material expended, in growing any crops such as berries, which can be harvested over a period of year [sic]." (Emphasis supplied.) If compensation could not be agreed upon by the parties, the lease provided for the matter to be settled by arbitration.

In May, 1972, defendant entered into a sublease to plaintiffs Ira Barby and Tarkington covering 19 acres of the property owned by Schulmerich, for a term from May, 1972, through July, 1975, with an option to renew for two years. In September, 1972, defendant entered into another sublease to plaintiffs Ira Barby and Otis Barby covering 13 other acres of the land that he had leased from Schulmerich for a term from September, 1972, through July, 1976, again with an option to renew for two years. Neither lease, however, mentioned the terms of the original lease between defendant and Schulmerich nor provided for termination if the property were sold during the lease period. After taking possession of the property, plaintiffs planted strawberries.

On March 20, 1975, Schulmerich's attorney notified defendant's attorney by mail that Schulmerich had entered into a contract to sell the property that defendant was leasing. In May, 1975, plaintiffs' attorney contacted defendant to exercise the option to renew the first lease for two years. In July, 1975, plaintiffs, unaware that the property was soon to be sold, harvested the 1975 berry crop, and shortly thereafter they cultivated the fields in preparation for the 1976 harvest. Subsequent to that cultivation, plaintiffs' attorney learned that the property was to be sold

and informed plaintiffs that they would have to vacate the premises. Plaintiffs' attorney testified that he was contacted during this period by the purchaser's (Duyck) attorney who informed him that Duyck was willing to continue to lease the property to plaintiffs for an increased rent of an additional $10,880 per year. That offer was rejected by plaintiffs, and in November, 1975, plaintiffs, defendant and Schulmerich entered into an agreement terminating all leases and subleases of record, although plaintiffs retained all personal rights and claims against defendant. Plaintiffs did not enter the property to harvest the 1976 strawberry crop, which was ultimately harvested by Duyck.

In May, 1976, pursuant to the lease between defendant and Schulmerich, an arbitration hearing was held, and defendant was awarded $19,276.65 as compensation for plaintiffs' 1976 and 1977 berry crops. That amount was immediately paid to plaintiffs.

Plaintiffs subsequently filed separate actions against defendant on each lease agreement. The cases were consolidated and tried to the court on plaintiffs' first claim for relief: breach of contract.[1] After making written findings of fact and conclusions of law, the court entered a consolidated judgment in plaintiffs' favor for $49,764.71.[2] From that judgment, defendant appeals, assigning as errors the trial court's: (1) denial of his demurrer based on plaintiffs' failure to state a cause of action; (2) finding that plaintiffs were required to vacate the premises in the fall of 1975 as a result of defendant's breach; (3) finding that defendant had notice as of March 20, 1975, that the land was going to be sold; (4) finding that plaintiffs had exhausted any claim to emblements when they harvested the 1975 crop; (5) finding that defendant had waived any rights under the emblements statute by actively soliciting plaintiffs' departure from the premises; (6) finding that the emblements statute is inapplicable in this setting; (7) finding that defendant

---

[1] Plaintiffs originally sought damages for negligent misrepresentation and unlawful trade practices. Those claims were stricken before trial.

[2] The trial court awarded damages of $50,582.81 for the 1976 crop year and concluded that plaintiffs would have lost $818.10 for the 1977 crop year, leaving a net judgment of $49,764.71.

is estopped to assert defensively plaintiffs' right to emblements because of his conduct; (8) finding that defendant failed to prove his affirmative defenses; and (9) method of calculating damages.

Defendant contends that his demurrer to plaintiffs' breach of contract claim should have been sustained because plaintiffs failed to allege that defendant prevented them from exercising their statutory emblements right under ORS 91.230. That statute provides:

"When the leasing or occupation is for the purpose of farming or agriculture, the tenant or person in possession shall, after the termination of the lease or occupancy, have free access to the premises to cultivate and harvest or gather any crop or produce of the soil planted or sown by him before the service of notice to quit."

In *Hostetler v. Eccles,* 98 Or 355, 194 P 166 (1920), the lease provided that if the property were sold during the lease period and a demand for possession were made before June 1 of any year, the lessee would be entitled to the cost of seed and labor or, if demand were made after June 1 and before November 1, the lessee would be entitled to remove the crop. The property was sold and possession demanded after June 1 and before November 1; however, the lessee did not attempt to harvest his crop but rather filed an action seeking reimbursement for seed and labor. The defendant (the new purchaser) demurred to the complaint and the trial court overruled it. In reversing a judgment for the lessee, the court stated that "the parties must be deemed to have contracted with reference" to the emblements statute and, therefore, the lessee had to look to the remedy provided in the contract: removal of the crop. Because the lessee failed to remove his crop or allege in his claim that he was prevented from removing it by the defendant, the court concluded that the lessee had failed to state a cause of action.

Here, as in *Hostetler,* the lease between the owner, Schulmerich, and the original lessee, defendant, contemplated the emblements statute: lessee could remove his crop in the year in which the notice terminating the lease was received. Beyond that year, lessee was required to accept compensation in lieu of harvesting the crop.

■ ■ Defendant received notice on March 20, 1975, that Schulmerich had entered into a contract to sell the leased property.[3] Plaintiffs harvested their 1975 berry crop. Under the terms of the Schulmerich lease, *defendant's* right to harvest a crop terminated in 1975. *Plaintiffs'* right, as sublessees, to harvest the 1976 crop was subject to the terms of the lease between Schulmerich and defendant and similarly terminated in 1975. Plaintiffs' right to emblements "is not superior to the source from which [they] obtained it." *Francis v. Schallberger,* 137 Or 529, 3 P2d 530 (1931). Accordingly, defendant's demurrer to the complaint based on plaintiffs' failure to allege that defendant denied them access to the property to harvest their 1976 crop was properly overruled.

■ In answering defendant's first assignment of error, we dispose of his next seven assignments of error, all of which essentially (1) dispute the sufficiency of the notice to terminate the lease given by Schulmerich and (2) question plaintiffs' obligations under the emblements statute. As stated, *see* n 3, *supra,* the notice received by defendant's attorney on March 20, 1975, stating that Schulmerich had entered into a contract to sell the property was sufficient to terminate the lease. Because that notice was given in 1975, plaintiffs' right to emblements under the original lease terminated that same crop year. The trial court findings about whether defendant solicited plaintiffs' departure

---

[3] On March 20, 1975, defendant's attorney received a letter from Schulmerich's attorney:

"Would you please advise [defendant] that Schulmerich Investments has entered into a contract to sell the ranch upon which [defendant] is now a tenant.

"You will recall that the lease provides that [defendant] is to be compensated in connection with the crop he will not be able to take from the premises, that is to say, the strawberry crop. We would be pleased to have [defendant's] thoughts as to the value of this item which will in effect be denied [defendant]."

Defendant contends that this letter does not evidence "notice to quit" within the meaning of ORS 91.230. Whether the letter does or does not constitute proper notice under the emblements statute, however, is irrelevant to the real issue here: whether the letter constituted notice to terminate the lease *under the agreement between the parties.* Because the agreement does not provide any particular method of notice, we conclude that the letter was sufficient to terminate the lease. It informed defendant that Schulmerich had entered into a contract to sell the property and that he would be compensated for the value of the unharvested strawberry crop.

from the property or is estopped by his conduct to assert their right to emblements are irrelevant; under the base lease, no emblements right existed beyond 1975 for either defendant or plaintiffs.

■ Finally, we consider whether the trial court erred in calculating damages. Defendant first contends that plaintiffs are limited in their damages to the arbitration award, because they had knowledge of the original lease between Schulmerich and defendant and are, therefore, bound by its terms. Whether plaintiffs had knowledge of the arbitration provision of the original lease is irrelevant. That provision did not concern the leased premises but only provided a method to determine the amount the original lessor would owe to defendant for the unharvested crop in the event that lease was terminated. Plaintiffs were not parties to that proceeding and are not bound by the arbitration award.

Finally, defendant contends that plaintiffs must accept the lesser of two measures of damages: the amount for which the property could have been rented or lost profits. Because plaintiffs could have continued to lease the property for an amount less than their lost profits, defendant urges that they are limited to that measure as damages. We disagree.

■ Plaintiffs acted reasonably in refusing to enter into the new lease in order to mitigate their damages in this instance. Additionally, because plaintiffs were not entitled to remove their crops under the statutory emblements right, their only remaining recourse was to seek damages for lost profits, which they were entitled to do. *Western Rebuilders, Inc. v. Felmley,* 237 Or 191, 202, 386 P2d 813 (1964); *Buck v. Mueller,* 221 Or 271, 281, 351 P2d 61 (1960). The damages were established with reasonable certainty and are supported by substantial evidence.

Affirmed.